[No. 27308.  *En Banc*.  October 7, 1939.]

BERYL I. LUNDAY, *Appellant*, v. THE DEPARTMENT OF
LABOR AND INDUSTRIES, *Respondent*.[1]

[1]Reported in 94 P. (2d) 744.

*Vanderveer & Bassett,* for appellant.

*The Attorney General* and *J. A. Kavaney, Assistant,* for respondent.

BLAKE, C. J.—This is an appeal from a judgment dismissing an appeal from an order of the joint board of the department of labor and industries denying a pension claimed by appellant under the industrial insurance act.

For some time prior to February 21, 1935, appellant's deceased husband had been in the employ of Benjamin Franklin Thrift Stores, Inc., as a grocery clerk. He was, however, assigned to duty on the delivery truck on an average of two days a week. On the day mentioned, when alighting from the truck, after making deliveries, he sustained an injury. Subsequently, he submitted to an operation which was designed to correct the condition brought about by the injury. Post-operation nephritis developed, from which he died some months later.

The department denied appellant's claim for pension on two grounds: (1) That her husband, at the time of injury, was not a workman in contemplation of the industrial insurance act; (2) that the injury was not the cause of death. As the latter point is not especially stressed, we shall discuss it first.

That the back condition, brought about by the injury, could be corrected only by operative procedure, is not disputed. Whether deceased had nephritis at the time of the injury, is not certain. He did have marked symptoms of it at the time of the operation. A week or ten days subsequent to the operation, nephritis developed to an unusual extent.

The department offered no medical evidence. From the testimony of two physicians who testified for claimant, we think it is clear that, if deceased did have nephritis at the time he was injured, the condition was so seriously aggravated by the injury and the subsequent operation as to result in death.

That operative procedure intervened and may have been the immediate cause of the condition from which death finally resulted, is immaterial. Right to compensation under the industrial insurance act persists as though the original injury were the immediate cause of death. See *Ross v. Erickson Const. Co.*, 89 Wash. 634, 155 Pac. 153; *Carmichael v. Kirkpatrick*, 185 Wash. 609, 56 P. (2d) 686.

The principal question presented is whether, at the time he was injured, appellant's husband was a *workman* in contemplation of the industrial insurance act. This question arises from the manner in which the meat department was conducted in the particular store in which appellant's husband was employed. The Benjamin Franklin Thrift Stores, Inc., operated a number of complete food markets in Seattle and other places in the state. These markets handled groceries, fruit and vegetables, and meats. A free delivery service was maintained.

Of course, as a grocery clerk, appellant's husband was not a workman in contemplation of the industrial insurance act. For the grocery business is not classified as extrahazardous. But the meat business, where power machinery is used, is so classified. And this classification includes trucks by which deliveries of meat are made. The fact that the truck carried both meat and groceries on the trip, at the end of which appellant's husband was injured, is not in dispute. So there can be no doubt that he was engaged in extrahazardous work in contemplation of the act.

■ The department contends, however, that it does not follow that his widow is entitled to a pension, because his employer, the Benjamin Franklin Thrift Stores, Inc., was not engaged in an extrahazardous business. This contention is based on the fact that the latter had leased the space occupied by the meat market and had sold, on conditional bill of sale, the market fixtures and equipment to one Jared. We think this contention is without validity.

In considering the effect of the lease and bill of sale upon appellant's rights under the industrial insurance act, we must keep in mind the declared public policy of the act—particularly as manifested by Rem. Rev. Stat., § 7685 [P. C. § 3479], which provides:

"No employer or workman shall exempt himself from the burden or waive the benefits of this act by any contract, agreement, rule or regulation, and any such contract, agreement, rule or regulation shall be pro tanto void."

The lease in question contains a stipulation which, we think, brings the Benjamin Franklin Thrift Stores, Inc., within the purview of the act as an employer in an extrahazardous business. For it was stipulated that all deliveries of meat should be made by the lessor in its trucks. Jared paid the lessor thirty dollars a month for this service. So that, to the extent it was engaged in the business of delivering meat, the Benjamin Franklin Thrift Stores, Inc., was an employer in an extrahazardous business. And the deceased husband was, therefore, a part-time employee in an extrahazardous occupation. While engaged in the performance of such extrahazardous duties, he was a workman in contemplation of the act. *Denny v. Department of Labor & Industries,* 172 Wash. 631, 21 P. (2d) 275; *Morris v. Department of Labor & Industries,* 179 Wash. 423, 38 P. (2d) 395.

In any event, an employee may, in contempla-
tion of workmen's compensation acts, sustain the rela-
tionship of employee to two employers, a general em-
ployer who pays his wages and a special employer to
whom he may be loaned and for whom he may be per-
forming services. When such an employee is injured
in the course of extrahazardous employment, he is a
*workman* in contemplation of the workmen's compen-
sation act, upon the theory that he is an employee of
either one or both of the employers. *Umsted v. Sco-
field Engineering Const. Co.*, 203 Cal. 224, 263 Pac. 799;
*New York Indemnity Co. v. Industrial Acc. Commis-
sion*, 126 Cal. App. 37, 14 P. (2d) 160; *Atherholt v.
William Stoddart Co.*, 286 Pa. 278, 133 Atl. 504; *De
Noyer v. Cavanaugh*, 221 N. Y. 273, 116 N. E. 992;
*Wright v. Cane Run Petroleum Co.*, 262 Ky. 251, 90
S. W. (2d) 36. In the latter case, the doctrine is stated:

"In such case, the employer who directs his servant
to work for another is regarded in law as the general
employer, and the one for whom he works as a special
employer, and the relation of employer and employee,
in the circumstances, exists between both of them and
the employee, himself. If the employee is under the
exclusive control of the special employer in the per-
formance of work which is a part of his business, he is,
for the time being, his employee; yet, at the one and
the same time, he is the employee of the general em-
ployer, as well as the employee of the special employer.
And he may, under the common law of master and
servant, look to the former for his wages and to the
latter for damages for negligent injuries; so under the
Workmen's Compensation Act he

" 'may so far as its provisions are applicable, look to
the one or the other, or to both, for compensation for
injuries due to occupational hazards.' "

Her husband having sustained injuries, in the course
of extrahazardous employment, which caused his death,

appellant is entitled to claim the benefits afforded by the industrial insurance act.

Judgment reversed.

MAIN, BEALS, MILLARD, GERAGHTY, and JEFFERS, JJ., concur.

SIMPSON, J. (dissenting)—As I view it, the conclusion that the department has jurisdiction over this claim is untenable.

In order to present my position, I deem it necessary to state the following additional facts: There were two pieces of mechanical equipment situated in and used within the meat market operated by power-driven machinery, to-wit, a refrigerator and a meat grinder. Appellant's husband testified that inside of the store he had nothing to do with the meat market, but was subject to call to assist the driver of the truck in delivering groceries from the Benjamin Franklin Thrift Stores, Inc., grocery store and meat from the market situated therein. Appellant's husband went on such deliveries "roughly twice a week" as a driver's assistant, and there were usually three deliveries on each of those days, and, as stated by the majority, he had been delivering meat just prior to the time of the accident.

During the month of May, 1930, one A. L. Jared entered into a partnership with the Benjamin Franklin Thrift Stores, Inc., in respect to the meat market situated in the grocery store located at Nineteenth avenue and east Aloha street, in the city of Seattle. Under that arrangement, Jared was paid a salary of two hundred dollars per month by the Thrift Stores, Inc., until August, 1933. It then appeared that the existing arrangement for the operation of the meat market was not economically feasible, and in lieu of taking a reduction in salary Jared and Benjamin Franklin Thrift

Stores, Inc., entered into a lease agreement whereby the latter leased the market to Jared. The lease provided for a term commencing August 1, 1933, and ending June 13, 1936, and provided for the payment by the lessee of forty dollars rental each month.

Paragraphs 3, 6, 8, 9, 15, 16, and 25, respectively, of the lease recite:

"(3) The lessee shall install his own store fixtures and lighting fixtures at his own expense, provided, however, that they shall be of such material and workmanship as to harmonize with fixtures installed in such store building by the lessor. Said lessee shall also furnish at his own expense such signs, etc., as may seem necessary provided, however, that such signs and other advertising shall be subject to the approval of the lessor."

"(6) The lessor shall be absolutely free and lessee agrees to save lessor harmless from any and all liability that may arise from injury or damage to persons or property occurring on the premises hereby demised, or that may be caused by the neglect of the lessee, his representatives, assigns, successors, or employees."

"(8) The lessee shall conduct his business on the premises as a department of the lessor under the name of Benjamin Franklin Thrift Market. The lessee, however, shall not use the name of the lessor or the credit of the lessor in connection with lessee's business or affairs, and said lessee hereby agrees and convenants that he will purchase only in his own name and at his own expense and on his own and sole credit all merchandise, material, and the like used in his said business, and will likewise make payment therefor promptly when due. The lessee shall not contract any bills in the name of the lessor, or involve the lessor in any expense or liability whatsoever."

"(9) The lessee agrees to keep the said meat market to be operated on the premises hereby demised, open for business at all times during the business hours of the lessor throughout the entire period of this lease and lessee shall supply at his own expense a sufficient

number of efficient sales people and others to properly conduct the business of said meat market. Should lessee or his employees desire to use said premises during other than regular business hours of lessor, permission therefor shall first be obtained from lessor."

"(15) Lessee agrees to pay for all power and refrigeration used on the premises hereby demised and further agrees to furnish lessor with such refrigeration as lessor may require, for which lessor agrees to allow lessee a credit of $3.50 per month on the rental hereby reserved."

"(16) Lessor agrees to allow lessee the use of lessor's delivery service, the lessee hereby agrees to use the same and to pay therefor to the lessor the sum of thirty dollars per month in addition to the rental hereby reserved, it being understood that this delivery service shall consist of one car making three trips per day and it being further understood that if additional delivery service be furnished lessee will increase the payment to be made for said delivery service proportionately."

"(25) It is understood and agreed that this lease shall be conditioned of that certain contract of conditional sale entered into between the parties hereto on the 29th day of August, 1933, wherein and whereby the lessee herein agrees to purchase certain fixtures from the lessor herein for use in connection with the premises hereby demised, and it is agreed that in the event of any default on the part of the lessee herein in connection with the conditional sales contract, then and in that event the lessor herein may at its option cancel and terminate this lease in the same manner as for any other forfeiture herein provided for."

From the foregoing provisions of the lease, it is apparent that the lessee was to conduct his business under the name of Benjamin Franklin Thrift Market, but in connection with his business he was not permitted to use the name or credit of the lessor; that the lessee was to employ the necessary personnel to operate the meat market save in regard to delivery service, and was to purchase the fixtures to be used in the meat

market; that the lessee was to pay for his own refrigeration used on the premises, but agreed to furnish the lessor with such refrigeration as proved requisite to its need, and the lessor agreed to allow the lessee a credit of $3.50 per month on his rental for that service; and by paragraph 16 of the lease the lessor agreed to allow the lessee the use of the lessor's delivery service, and the lessee agreed to use the same, and pay therefor a minimum of thirty dollars per month in addition to the rental.

The lessee, Jared, continued to operate under the lease until July 21, 1935. The injury was sustained February 21, 1935.

It is admitted that the lessee, Jared, never paid appellant's husband his wages or any part thereof during the term of his lease, and his entire salary was paid to him by the Benjamin Franklin Thrift Stores, Inc.

With the foregoing facts in mind, I now turn to a consideration of the applicable law.

Rem. Rev. Stat. (Sup.), § 7676 [P. C. § 3471], class 43, providing basic premium rates for the accident fund and the medical aid fund, recites in part:

"Meat, fish, and poultry markets (with power machinery), (includes drivers and helpers) . . ." Laws of 1937, chapter 89, p. 345, § 1.

Grocery stores are not classified under the act as being extrahazardous in character.

It may be observed, however, that Rem. Rev. Stat. (Sup.), § 7674 [P. C. § 3469], reads in part:

"There is a hazard in all employment, but certain employments have come to be, and to be recognized as being inherently constantly dangerous. This act is intended to apply to all such inherently hazardous works and occupations, and it is the purpose to embrace all of them, which are within the legislative jurisdiction of the state, in the following enumeration, and they are intended to be embraced within the term

'extrahazardous' wherever used in this act, to-wit:

"Factories, mills and workshops where machinery is used; . . . transfer, drayage and hauling; . . ." Laws of 1937, chapter 211, p. 1028, § 1.

While transfer, drayage, and hauling are declared to be extrahazardous in nature and under the act (Rem. Rev. Stat. (Sup.), § 7674), still since the grocery and meat business are so closely related to each other in this particular case and the groceries and meats were frequently delivered together as an accommodation to the customer, the grocery store was not really engaging in the business of transfer, drayage, or hauling within the contemplation of the act, and thus was not under the act because of its delivery service. *Edwards v. Department of Labor & Industries,* 146 Wash. 266, 262 Pac. 973; *Dingman v. Department of Labor & Industries,* 157 Wash. 336, 288 Pac. 921; *Carsten v. Department of Labor & Industries,* 172 Wash. 51, 19 P. (2d) 133; *Dalmasso v. Department of Labor & Industries,* 181 Wash. 294, 43 P. (2d) 32; *Jannak v. Department of Labor & Industries,* 181 Wash. 396, 43 P. (2d) 34; *Johnson v. Department of Labor & Industries,* 182 Wash. 351, 47 P. (2d) 6.

Moreover, it does not follow that, because drivers and helpers employed in meat markets are under the act by its express terms, that drivers and helpers employed by grocery stores in making delivery therefrom are also under the act.

The making of delivery of groceries and, in addition, of meats, by an employee of the grocery store, from the meat market situated in the same store operating under a lease from the lessor grocery, does not, to my mind, bring such an employee of the grocery store under the act, even though such an employee of a meat market would be under the act.

There then remains the question as to whether this

lease was intended as a device envisaged either by the proprietor of the meat market, the lessee, or the employees, engaged in making deliveries of meats or both, which is prohibited by Rem. Rev. Stat., § 7685 [P. C. § 3479]. I am unable to acquiesce in the conclusion of the majority that appellant's husband occupied a dual employment status, that is, that he had both a general and special employer. He was employed solely and exclusively by the grocery store. The evidence does not disclose that his services were loaned to the operator of the meat business, but simply that he was at times ordered to assist the driver of the Thrift Store truck in making deliveries. He was never subject to any orders or directions of the meat store operator.

It does not appear that the covenant in the lease relating to delivery service was made with the intention of violating Rem. Rev. Stat., § 7685, even though the lessee is thereby enabled to escape the burdens he would otherwise have to assume under the act. We are, then, confronted with the question of whether a meat market whose drivers and helpers are admittedly under the act, may entrust to an independent concern, a grocery store, whose drivers and helpers are not under the act, the delivery of its meats.

While, under Rem. Rev. Stat., § 7685, an employer whose employees are under the act may not contract with his employees to exempt himself from the burdens of the act, still that statute does not preclude him from entering into a contract with another firm for the conduct of a certain phase of his business even though the employees of such other firm would not be under the act, while if employees of the original employer performed the same work, they would be covered by the act.

As a practical matter, the real reason that prompted the legislature to place drivers and helpers of meat

markets under the act was that such drivers and helpers usually also worked in the meat market and around and with power-driven machinery therein. Otherwise, the legislature would have placed all drivers and their helpers of all forms of business under the act. Since the reason for the inclusion of meat market employee drivers and helpers does not obtain under the facts here, inasmuch as the appellant's husband was exclusively a grocery store employee and did not work at all in the meat market, he was not a workman engaged in extrahazardous employment. The legislature did not intend to extend the act to cover such an employee. Thus, the covenant in the lease relating to deliveries is not inhibited by Rem. Rev. Stat., § 7685.

The result of the majority opinion will be to bring within the act every employee of allied enterprises whose employees are not classified under the act as engaged in extrahazardous work, who handle any product, however small, of a business whose employees are expressly covered by the act.

For the foregoing reasons, I dissent.

STEINERT and ROBINSON, JJ., concur with SIMPSON, J.