# CHRISTENSEN, STATE TREASURER, v. SIKORA

(No. 2195; April 22, 1941; 112 Pac. (2d) 557)

58

For the appellant there was a brief by *Ewing T. Kerr,* Attorney General; *Harold I. Bacheller,* Deputy Attorney General; and *Arthur Kline,* Assistant Attorney General, of Cheyenne, and oral argument by *Mr. Kline.*

60

For the respondent, the cause was submitted on the brief of *N. V. Kurtz* of Sheridan.

RINER, Chief Justice.

This litigation arises under and involves the proper construction of certain words and clauses of the Workmen's Compensation Law of this State. The district court of Sheridan County made an award for temporary total disability in favor of Tony Sikora, hereinafter usually mentioned as the "claimant". Neither the employer nor the claimant has in any manner questioned the award thus made, but direct appeal proceedings in this matter brought it here, at the instance

of the State Treasurer, Mart T. Christensen, the official charged with the duty of making payments of awards from the Workmen's Compensation fund and who is herein represented by the Attorney General, his Deputy and his Assistant. The appellant will generally hereinafter be so designated or by his official title, the "Treasurer".

Generally speaking the facts are not greatly in dispute, and are briefly these: Claimant was employed as a grocery clerk and to wait on ranch trade by the Red Owl Stores, Inc., which conducted a combined retail meat and grocery business on a main floor in a building and in the basement underneath. The main floor had two rooms, a larger room where the principal work of both the grocery and meat market was carried on and a smaller room back of the larger, which was used as a storeroom, as was the basement. Claimant was engaged on either February 20 or 21, 1940, in lifting a number of one hundred pound bags of salt in the basement, carrying them to and up a stairway to a waiting truck belonging to a ranch outfit and on which truck the bags were loaded. Aiding in this work was one Belmont, an assistant meatcutter, and also the ranch employee driver of the truck. After a number of bags had been loaded claimant picked up another one which slipped, and using claimant's own words as given on the witness stand, "as it slipped on me I grabbed it and I dropped the sack and had a pain in my side. I sat down and stayed there until they finished loading the salt". The injury sustained by claimant in consequence of this accident was later diagnosed as hernia. He had previously suffered a hernia and had undergone an operation, which was successful and the wound had properly healed.

In the larger room mentioned above, the front end thereof was devoted to displaying and selling groceries, while back of that but in the same room was a counter

.

with a case in which meat and non-perishable cheese and butter were kept and over which meat was sold. Back of this counter were meat blocks and certain machines, all driven by electric power. In the large room, where all the employees of the Red Owl Stores, Inc., were engaged in their work, there were: a coffee grinder, run by an electric motor, for the convenience and use of the grocery part of the business (this machine would occasionally get clogged with paper, apparently from the coffee containers, getting into it; it then had to be opened up and the paper removed; usually it was all enclosed) ; a meat cutter and sausage grinder, both of these being electric power driven units and located back of the meat counter. The record does not inform us of the size, wiring, or method, in detail, of operation of these machines, although some data is supplied in regard to the sausage grinder. The coffee grinder was located in the front of the room. There were two electrically driven fans also in the room. Where they were located and their description as to size, wiring, etc. is not supplied by the record. In the back room on the same floor as the large room, as hereinbefore stated, was placed a power driven refrigerator unit.

While as a matter of bookkeeping the workers in the grocery and meat sections in the business were separately hired and paid by the several departments of the store, the Red Owl Stores, Inc., of course, was their employer and paid their compensation.

Apparently the workers in the large room performed the duties required of them interchangeably as the necessities of transacting the business of the concern demanded. On this point the claimant testified substantially, among other things, that he did everything that was to be done in waiting on trade; that Belmont was employed in the meat department, and yet he helped in moving the salt which was sold by the gro-

cery side of the business; that his (claimant's) work took him in the vicinity or roundabout the meat cutter, and that he wrapped up and sold meat, butter and cheese, all of which were regarded as items handled by the meat department; that he got stuff out of the ice box and sold it; that the manager of the meat department, one Kleiber or Kloiber, asked Sikora to wait on meat customers if he, Sikora, was not busy (Kleiber denies that he told Sikora this, which produced a conflict in testimony the district court was authorized to resolve) ; that claimant did whatever should be done; that in order to get from one department to the other in the large room all one had to do was to go to the end of the meat counter and step around it; that there was no objection on the part of the management to Sikora selling meat, and he was told to go ahead and sell; that the two other grocery clerks went in there behind the meat counter and sold meat.

Belmont, the assistant meat cutter, stated, "We always took it upon ourselves, I guess, to go out and help whenever there was help to be had or needed."

Jones, the manager of the Red Owl Stores, Inc., testified, "Everybody does everything that is to be did." Kleiber, in charge of the meat department, said that the grocery department clerks were not excluded from getting articles handled by the meat department and selling them and were not told positively by the Red Owl Stores, Inc. that they must not do this. The manager of the Stores, Jones, requested Sikora after the accident upon which this litigation arose happened, to fill out Workmen's Compensation papers, though he (Jones) never reported the grocery clerks as included in the pay roll for the State Workmen's Compensation Department. The employer also reported the accident to the Workmen's Compensation Department in the

Treasurer's office, but stated on the back of this report that:

"PLEASE NOTE:

It is our contention that the Workmen's Compensation act does not cover this particular employe as he was not engaged in extrahazardous employment. We cover the meat department employes with the Compensation Bureau but carry a liability policy for all other employes. Therefore, this claim, we believe, comes under our Employers Mutual Liability Insurance Company policy."

On July 10, 1940, evidence was presented to the trial court by both the claimant and the Red Owl Stores, Inc., and the court found that "the business of the employer was running a meat market and a grocery store and workshop where machinery was used; that all of said business was conducted as a whole on a ground floor and basement in one building; that the duties of the employee required him to wait upon trade in said grocery store, meat market and workshop; that while carrying bags of salt weighing approximately one hundred pounds said employee slipped and in attempting to catch himself received a sudden strain, resulting in a right inguinal hernia. Temporary total disability began June 3, 1940, and continues. Has not as yet elected to accept surgical procedure for the hernia. Compensation from June 3, 1940, to and including July 10, 1940, 37 days at $80.00 month. That there were dependent upon said Employee at the time of the accident wife and two children, aged 12 and 10 years respectively." Thereafter, on the petition of the Treasurer the cause was reopened, and on September 24, 1940, a second hearing was had, upon the conclusion of which the court found generally in favor of the claimant and that the award as above described should be affirmed. This is the order from which the present appeal has been prosecuted.

The especially pertinent portions of the Wyoming statutory law involved are those clauses of Section 124-104 Wyoming Revised Statutes, 1931, as amended by subsequent enactments and particularly Session Laws of Wyoming, 1939, Chapter 118, Section 1, reading:

"The extra-hazardous occupations to which this chapter is applicable are as follows: Factories, garages, mills, printing plants and workshops where machinery is used * * * * butcher shops, meat markets * *";

and sub-section (b) of Sections 124-106, 124-107, as amended by subsequent enactments and particularly by Session Laws of Wyoming, 1937, Chapter 128, Section 2, and reading:

" 'Work shop' means any yard, plant, premises, room or place where power driven machinery is employed and manual labor is exercised by way of trade or gain, or otherwise incidental to the process of making, altering, repairing, printing or ornamenting, finishing or adapting for sale, or otherwise any article or part of article, over which premises, room or place the employer of the person working therein has the right of access or control."

We have italicized a portion of sub-section (b) in order to, if possible, set forth more vividly the meaning of the statute involved as it may be applied to the facts above set forth.

From the findings made by the district court it would seem that the large room used by the Red Owl Stores, Inc., was regarded by the court as a "work shop where machinery was used", and that it came well within the definitive terms of the italicized portion of sub-section (b) of Section 124-106 and 124-107, quoted above.

The contention of the Treasurer is that the district court's interpretation of the statutory law under the facts presented was erroneous and that this case

should be ruled by the principles announced in our case of Leslie v. City of Casper, 42 Wyo. 44, 288 P. 15, while claimant insists that our decisions in Associated Seed Growers, Inc. v. Scrogham, 52 Wyo. 232, 73 P. (2d) 300, and Ideal Bakery v. Schryver, 43 Wyo 108, 299 P. 284, are those to be more especially regarded as in point.

The Leslie case was one where the workman, Leslie, was employed by the City of Casper both as "poundmaster" and "truck driver". His proofs showed that he worked part of the time in the employment first mentioned. He was also employed in connection with the cleaning of the streets of the City of Casper and the removal of trash therefrom, which refuse was carried to the city dump. In the accomplishment of this last mentioned task and also at times in the work of poundmaster, he drove a truck owned by the city. While working as poundmaster he was injured on account of being thrown from a horse he was riding in trying to impound stray horses. Employment as poundmaster was not designated by the then law as extra-hazardous, while "general trucking" was.

This court, expressing a doubt whether Leslie's work came within the statutory designation of "general trucking" and while not deciding the point, gave the workman the "benefit of the doubt". In the course of the opinion it was pointed out that the workman particularly relied on the case of Crockett v. Industrial Accident Commission, 190 Cal. 583, 213 P. 969, 971. Holding that the case was distinguishable from the Leslie case, this court, reviewing the Crockett case, said in part:

"In that case the workman was engaged as a carpenter in converting a barn into a residence. While his principal task was carpentry, he was called on to do a number of jobs that did not call for the services of a carpenter, but were incidental to the work he was

employed to do. He had been instructed by his employer to do whatever the employer's wife might demand of him. The workman's eye was injured while, at the request of the employer's wife, he was sweeping cobwebs and dirt from some floor joists. The California law under which the claim to compensation was prosecuted applied generally to all employments, with stated exceptions. The workman was entitled to compensation if at the time of his injury he was 'performing service growing out of and incidental to his employment and * * * acting within the course of his employment.' The employer contended that the injury was sustained while the workman was engaged in 'household domestic service', an excluded employment. The court refused to disturb a finding by the Industrial Commission that the injury was sustained while the workman was performing services growing out of and incidental to his employment, and not while engaged in the excluded employment of household domestic service."

Our conclusion in the matter was that the "workman's injury was not sustained in an extra-hazardous employment, and his claim, therefore, was not within the statute".

We are inclined to think that the Leslie case is distinguishable from the case at bar, both in its facts and the law applicable thereto, and that it was correctly decided. It is apparent in the case at bar that Sikora while hired as a grocery clerk, as a matter of fact was employed to wait on ranch trade and to do whatever there was to be done, whether as such grocery clerk or as meat market clerk, in a room which contained power driven machinery which was employed and manual labor was exercised by way of trade or gain, or otherwise "incidental to the process of * * * * adapting for sale * * * * any article or part of article, over which premises, room or place" the Red Owl Stores, Inc., had the right of access and control. We may here note that in the Crockett case aforesaid the workman was to do whatever the employer's wife demanded of him and he

was injured through complying with her request. In the case at bar Sikora was injured in doing what he was expressly hired and told to do or what he was expected and allowed to do. Obviously his chief work was in a room which was expressly defined by law as a hazardous place of occupation, viz., both a meat market and a work shop where power driven machinery was used.

The Ideal Bakery case, supra, would seem to be rather more closely in point than any other of the previous decisions of this court. There a baker, working in a kitchen in which power driven machinery was used, cut his finger while opening a tin can and blood poisoning ensued, from which injury he subsequently died. The law at that time listed as an extra-hazardous occupation "restaurant and bakery kitchens where power machinery is used" (Section 4318 of Chapter 258 Compiled Statutes of Wyoming, 1920, as amended by Chapter 46, Laws of 1929). The contention was made that: "Only injuries sustained through the use of power machinery are compensable under the law as applied to bakeries." Declining to uphold the view thus insisted upon, this language was used:

"The law certainly includes injuries suffered through the performance of all duties of the employment, whether main or incidental thereto but called for by it. If we premise that the workman cut his finger on a tin can while at his work in the bakery, it seems too plain for argument that the injury came to him as a result of his employment and 'while at work in or about the premises occupied, used or controlled by the employer.'"

We may in this connection briefly review some additional late decisions as furnishing us aid in reaching a proper conclusion in this case:

The law (Workmen's Compensation Law of Louisi-

ana, Act No. 20 of 1914 as amended) provided that:

"Every person performing services arising out of and incidental to his employment in the course of his employer's trade, business or occupation in the following hazardous trades, businesses, and occupations: * * *

"The installation, repair, erection, removal or operation of boilers, furnaces, engines and other forms of machinery."

The widow of the general manager of a dairy company brought suit for compensation on account of the death of her husband, who was killed while driving the company's truck. It was contended that: "The business of conducting a dairy is a farming pursuit, and therefore, from its very nature, nonhazardous." However, in affirming an award to the widow, the Court of Appeals of Louisiana, Second Circuit, in the case of Staples v. Henderson Jersey Farms, Inc., (La. App.) 181 So. 48, it was pointed out that:

"There are some phases of a dairying business that are nonhazardous per se. Among these may be listed the milking by hand and feeding of cows; tilling land necessary to produce feed for the milch cows; and selling of its products by delivery at the plant. But the ownership and operation of a truck, boiler, engines, motors, etc., are indispensable to the successful conduct of a general dairying business at the present time. They may not be classed as merely incidental to the principal business. A business may consist of several departments, some of which are hazardous per se or made so by law, while others are clearly nonhazardous; and it is now well settled that an employee, whose duties require him to perform services in both the hazardous and nonhazardous departments, and who is injured while performing nonhazardous services, may recover compensation. These principles were first announced in Byas v. Hotel Bentley, Inc., 157 La. 1030, 103 So. 303."

See also Crews et ux v. Levitan Smart Shops, Inc.,

(La. App.) 171 So. 608; Wood v. Peoples Homestead & Savings Ass'n. et al., (La. App.) 177 So. 466.

In Lunday v. Department of Labor & Industries, 200 Wash. 620, 94 P. 2d 744, the facts as stated by the court were:

"For some time prior to February 21, 1935, appellant's deceased husband had been in the employ of Benjamin Franklin Thrift Stores, Inc., as a grocery clerk. He was, however, assigned to duty on the delivery truck on an average of two days a week. On the day mentioned, when alighting from the truck, after making ·deliveries, he sustained an injury. Subsequently, he submitted to an operation which was designed to correct the condition brought about by the injury. Post-operation nephritis developed, from which he died some months later."

The Department denied an award. In reversing this ruling the Supreme Court of Washington said:

"The principal question presented is whether, at the time he was injured, appellant's husband was a workman in contemplation of the industrial insurance act. This question arises from the manner in which the meat department was conducted in the particular store in which appellant's husband was employed. The Benjamin Franklin Thrift Stores, Inc., operated a number of complete food markets in Seattle and other places in the state. These markets handled groceries, fruit and vegetables and meats. A free delivery service was maintained. Of course, as a grocery clerk, appellant's husband was not a workman in contemplation of the industrial insurance act. For the grocery business is not classified as extrahazardous. But the meat business, where power machinery is used, is so classified. And this classification includes trucks by which deliveries of meat are made. The fact that the truck carried both meat and groceries on the trip, at the end of which appellant's husband was injured, is not in dispute. So there can be no doubt that he was engaged in extrahazardous work in contemplation of the act. The department contends, however, that it does not follow that his widow is entitled to a pension, because his

employer, the Benjamin Franklin Thrift Stores, Inc., was not engaged in an extrahazardous business. This contention is based on the fact that the latter had leased the space occupied by the meat market and had sold, on conditional bill of sale, the market fixtures and equipment to one Jared. We think this contention is without validity.

"In considering the effect of the lease and bill of sale upon appellant's rights under the industrial insurance act, we must keep in mind the declared public policy of the act—particularly as manifested by Rem. Rev. Stat. § 7685, which provides: 'No employer or workman shall exempt himself from the burden or waive the benefits of this act by any contract, agreement, rule or regulation, and any such contract, agreement, rule or regulation shall be pro tanto void.'"

"The lease in question contains a stipulation which, we think, brings the Benjamin Franklin Thrift Stores, Inc., within the purview of the act as an employer in an extrahazardous business. For it was stipulated that all deliveries of meat should be made by the lessor in its trucks. Jared paid the lessor thirty dollars a month for this service. So that to the extent it was engaged in the business of delivering meat, the Benjamin Franklin Thrift Stores, Inc., was an employer in an extrahazardous business. And the deceased husband was therefore a part-time employee in an extrahazardous occupation. While engaged in the performance of such extrahazardous duties, he was a workman in contemplation of the act."

The Lunday case goes farther than the district court in the case at bar was required to go in reaching the conclusion it did.

In the course of the opinion filed in Sunshine Food Stores, et al., v. Moorehead, 153 Okla. 301, 5 P. 2d 1066, we find the court used this language:

"The petitioner contends: 'The employer, Sunshine Food Stores, was not engaged in a hazardous occupation covered by the Workmen's Compensation Act and the Commission was, therefore, without jurisdiction to enter its order and award.'

"In support thereof, the petitioner calls attention to

the fact that it was engaged in the operation of a retail grocery store with a retail meat market conducted in connection therewith. In the retail meat market a hand-driven meat slicing machine and a power-driven meat grinder were used.

"We agree with the petitioner that 'A retail meat market, as such, is not included as one of the hazardous employments' within the provisions of section 7283, C. O. S. 1921, as amended by Laws 1923, c. 61, § 1; but, when a power-driven meat grinder is used therein, it becomes a workshop as defined by section 7284, C. O. S. 1921, as amended by Laws 1923, c. 61, § 2, and it is within the provisions of the act.

"The record in this case shows that, as a part of the meat market business of the petitioner, meat was ground in the meat grinder with a power-driven meat grinder. The meat market, therefore, was a workshop wherein power-driven machinery was employed and manual and mechanical labor exercised by way of trade, and it was within the provisions of the act.

"The fact that the claimant was not injured while operating the power-driven machinery does not defeat his right of compensation."

See also Harbour-Longmire-Pace Co. v. State Industrial Commission, 147 Okla. 207, 296 P. 456, and Oklahoma Railway Co. v. Voss et al., 187 Okla. 622, 105 P. 2d 218. Many other cases of similar purport could be supplied.

The facts in this case indicate that the grocery store was merely one phase of the general business conducted by the Red Owl Stores, Inc., in the large room described above. The meat market was simply another phase of the same business. Indeed, the way the affairs of the Red Owl Stores, Inc., were in the instant case conducted, it could just as well be regarded as a meat market, selling groceries, as a grocery store selling meats. The proof, as we have seen, shows that the meat market phase of the business sold butter, milk and cheese, ordinarily regarded as groceries, and that

the perishable cheese was kept in the power operated refrigerator of the meat unit of the business.

It is quite evident also that the store's employees worked any place where work was required to be done in the large room aforesaid. All of the employees of the store, it is clear, were not only working around power driven machinery in the room aforesaid, whether they actually used the machinery or not, but they also worked in a meat market. While grocery stores are not by that name listed as extrahazardous occupations, yet it is far from clear that the Legislature did not intend they should be included if the employer, to suit his own convenience or increase his profits, as in the instant case, places his employees in a room with a number of power driven machines and requires or allows them to work there with such machines or in proximity to them. The law, so far as this case is concerned, made no exceptions and used no qualifying phraseology in its definitions of a work shop of this character, and we fail to perceive how we can make any. It may be noted, too, that the Twenty-sixth Legislature has recently added qualifying language to the definition of a workshop, as quoted above, (Laws of Wyoming, 1941, Chapter 122, Section 2). That body, of course, is properly the source of all changes in the law and not the courts.

It is suggested that the State Treasurer, the executive officer charged with the duty of administering the Workmen's Compensation Law, has always regarded grocery stores as without the purview of that law and the principle is invoked that the contemporaneous construction placed thereon by an official or department whose duty it is to administer a law should prevail. But that rule is "restricted to cases in which the meaning of the statute is really doubtful, and the courts are not bound to follow, or justified in following, an execu-

tive construction which is clearly erroneous". (59 C. J. 1030-1031, and cases cited.)

We may not lay aside, however, the well-known principle which has heretofore been so frequently mentioned by this Court in disposing of Workmen's compensation cases, viz., that the Workmen's Compensation Law of Wyoming should be liberally construed so that where reasonably possible the industry and not the individual workman should, to a large extent, bear the burdens of accidents suffered within it.

Without further prolonging this opinion, our conclusion is that the district court was not mistaken in affirming its original award order in this case made and its final order to that effect should be here approved.

*Affirmed.*

KIMBALL, J., concurs.

BLUME, J.

I concur in the result. I do so with some misgivings, on account of the fact that heretofore grocery stores have never been considered as coming within the workmen's compensation laws. But I am not able to say that the grocery department involved in the case at bar, which contained a power-driven coffee grinder, was not, under the statute as it was at the time of the accident herein, a room where "power-driven machinery is employed". Sunshine Food Stores v. Moorehead, 153 Okl. 301, 5 P. (2d) 1066; Eckhardt v. Jones' Market, 105 Or. 204, 209 P. 470. I doubt very seriously that the workman in this case was entitled to compensation by reason of the fact that he was virtually an employee in the meat department of the store. That department was separate. He was in there occasionally. But he was a volunteer. He was not injured therein. Unless the policy of the statutes is to the

contrary—which it has not been heretofore—I do not believe that the mere fact that an employee in a grocery department occasionally goes into a meat department, which is separate from the grocery department, should by reason of that fact alone be entitled to compensation. He could at most be considered a part-time employee in the meat department, and if he were injured therein, then, perchance, and not otherwise, should he be able to recover compensation by reason of having been permitted to go into that department, under the holding of Lunday v. Department of Industries, 200 Wash. 620, 94 P. 2d 744; Leslie v. City of Casper, 42 Wyo. 44, 288 P. 15. I can readily see the difficulty of the Workmen's Compensation Department even under that holding in arriving at a just determination as to what contributions should be made to the compensation fund. The statutes should be clarified.