[No. 36794.    Department Two.    March 12, 1964.]

A. B. COLBURN, *Respondent*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Appellant.*\*

*The Attorney General,* and *Marcus M. Kelly, Assistant,* for appellant.

*Joseph J. Stangle,* for respondent.

DONWORTH, J.—This is an appeal by the Department of Labor and Industries from a judgment of the superior court which reversed a decision of the Board of Industrial Insurance Appeals and ordered the department to allow a claim filed by respondent.

\*Reported in 390 P. (2d) 10.

The essential facts are not in dispute.

Washington Monumental Company, a corporation, respondent's employer, is engaged in the business of selling monuments, markers, stone, and marble in Spokane. Respondent, being a salesman, had no prescribed hours during which he was required to be on the premises of his employer or in which he would attempt to make sales. The only requirement of employment was that he handled his territory properly. He worked out of his home, as well as the company office, in a territory including the city of Spokane and the Spokane Valley. As long as he handled that territory satisfactorily, he could make sales at any time. If he happened to be in the city, he usually went to the company office "to see if there was anything in the basket." At the time of the accident, he was selling granite on a commission basis for the company. He had been so employed for about 9 years. His sales had, for some time prior to the accident, been restricted to granite as opposed to the sale of marble. Respondent would receive no commission for on-the-premise sales of marble, whereas a sale of granite made there would result in a commission.

The company also employs three to four workmen on an hourly, semi-monthly, or monthly basis. These employees work in a workshop where marble is fabricated, cut, and polished. They occasionally engage in the sale of marble on the premises if the president of the company or other salesmen are not available, but the sale of marble is not their primary duty.

These workmen are within the compulsory coverage of the Industrial Insurance Act because they work in a workshop wherein power-driven machinery is employed, to wit, an air compressor, polishing machine, stone saw, sandblast machine and other small machines. See RCW 51.12.010 and RCW 51.08.190. They are classified for the purpose of fixing premium rates as stonecutters and marble setters under RCW chapter 51.12. No premiums were ever paid by the employer with respect to respondent.

August 8, 1960, respondent was in the office of the company. A woman customer entered and desired to be shown

some marble. In the office at that time were respondent and a stenographer. The president of the company, who would normally show marble, was absent. Respondent went into the workshop where two stonecutters were working to find someone to show marble to the customer. One of the workmen, who sometimes sold marble, told respondent that he was cutting stone and would be busy for 15 or 20 minutes. Respondent then proceeded to show the customer marble by taking her out into the company yard where it was stored. While showing various pieces of marble to the customer, a slab of it fell on respondent, fracturing his left leg in two places.

Thereafter, respondent filed an industrial insurance claim, which was rejected December 12, 1960, by the Supervisor of Industrial Insurance, for the reason that respondent was not under the Industrial Insurance Act at the time of his injury. Respondent filed a notice of appeal with the Board of Industrial Insurance Appeals.

February 16, 1962, pursuant to the provisions of RCW 51.52.095, respondent presented a written agreement to the board. This agreement, signed by respondent and his employer, stated that the board could grant the claim if it was found to be in accordance with the law and the facts. A hearing before the board was set.

A hearing was held September 26, 1961, to determine the law and the facts, and was continued from time to time. April 9, 1962, the board filed a 21-page decision in which many decisions of this court bearing on the problem were thoroughly analyzed. Attached to its decision are findings of fact, conclusions of law, and its order. This order sustained the rejection of the claim by the supervisor. An appeal was taken to the superior court.

The superior court, sitting without a jury, considered the board record as all of the evidence in the case, and, after rendering an oral opinion, entered judgment reversing the board's order and remanding the claim to the department with instructions that it be allowed. The Department of Labor and Industries has appealed to this court from that judgment.

· 'The sole issue to be decided by us is whether respondent, by the nature of his activity at the time he was injured (selling marble), was engaged in extrahazardous work so as to bring him within the compulsory provisions of the Industrial Insurance Act.

Appellant's first assignment of error is to the trial court's finding of fact No. 2.[1] We agree with appellant that the record before this court does not support the finding that respondent was, at the time of his injury, performing work usually done by marble setters.

The board's finding of fact on this issue reads as follows:

"Showing marble to customers coming into the company's office was not one of the claimant's duties and he was not compensated therefor. The president of the company, Byron L. Swanson, normally showed marble and stone to customers who came into the office, but it was customary in his absence, for anyone available in the office or the shop to take care of such customers and, the claimant quite frequently showed marble to customers."

Appellant's other two assignments of error are directed to the trial court's conclusion of law No. 1[2] and to the entry of judgment, because the law and the facts do not support such a result.

Respondent urges that the trial court's judgment should be affirmed on the basis of the following argument:

Since the employer's workmen who *were* covered by the act would have received compensation for injuries sustained while showing marble to a prospective customer,

[1]Finding of fact No. 2: "On August 8, 1960, the claimant suffered fractures of his left leg while in the employ of the Washington Monumental Company, in Spokane, Washington, while performing labor which is usually performed by marble setters in the employ of the Washington Monumental Company. . . ."

[2]"The agreement entered into between the claimant and the employer which was presented to the board on February 16, 1961, was in accord with the law and the facts and should have been allowed by the board. The Decision and Order of the board issued on April 9, 1962, should be reversed and this claim should be remanded to the department with instructions to allow the claim and take such further action as is required by law."

respondent, who was *not* covered by the act with regard to his work as a salesman, should receive compensation under the act because he was performing precisely the same service for the employer as the workmen would have performed when showing marble.

It seems to us that this is a pure non sequitur as the principal cases cited by respondent demonstrate.

In *Wendt v. Industrial Ins. Comm.*, 80 Wash. 111, 141 Pac. 311 (1914), a carpenter continuously employed by a department store was killed while turning on an electric switch in the repair shop to operate some power-driven machinery. This court interpreted the Industrial Insurance Act (as it then existed) as covering the carpenter's employment. We there said, at p. 116:

". . . It may be admitted that, in its main business of conducting a large department store, the Stone-Fisher Company was not engaged in an extra hazardous industry, but, in connection with and as a part of this business, it maintains a workshop where machinery is used, power-driven machinery is employed, and manual labor is exercised, over which place it has the right of access or control, which place is expressly included within the enumeration of extra hazardous work. . . . Again, the act recognizes in § 4 that the same employer may at the same time be engaged in employment both within and without the purview of the act, so far as the hazardous character of the employment is concerned; in which case the act shall apply only to the extra hazardous departments and to the workmen employed therein. So, however we answer the contention of the commission, whether it is necessary for the employer to engage in some extra hazardous work either in respect to his whole business or some department thereof, in order that an injured employee shall be entitled to protection, or whether it is only necessary to show that the injured employee himself was engaged in some extra hazardous work, the result upon the submitted facts must be the same. The business of the Stone-Fisher Company was, within the meaning of this act, extra hazardous in the maintenance of the workshop where power-driven machinery and men were employed, and the deceased himself was at the time he met his death, engaged in an extra hazardous employment as defined by the act. If we could so construe the act that the extra hazardous character of the

employer's business was to be determined by the business he was principally engaged in, we might accept the finding of the commission; but the act, as we have seen, recognizes the fact that the same employer may conduct different departments of business, some of which fall within the act, some of which do not. And in this connection it matters not which is the principal business and which is the incidental business. If the employer conducts any department of his business, whether large or small, as an extra hazardous business within the meaning and defined terms of this act, his workmen would come within the class designated by the act, and be entitled to the protection of the act. . . ."

As to the employees employed in the repair shop, the employer was engaged in an extrahazardous business. If respondent in this case had been employed to work with power-driven machinery in the stonecutting shop at the time he was injured, a very different situation would have existed. Here respondent was working in a nonextrahazardous department of his employer's place of business.

Respondent also refers us to *Lunday v. Department of Labor & Industries*, 200 Wash. 620, 94 P. (2d) 744 (1939), which involved the death of a grocery clerk who was assigned to duty on the delivery truck as part of his employment. The employer sold the usual line of groceries, and leased a portion of the premises to a retail meat dealer. A free delivery service was maintained for the convenience of patrons of both the grocery store and the meat market. Under the Industrial Insurance Act, the meat business, where power-driven machinery is used, was classified as extrahazardous; the grocery business was not. The delivery truck on which the deceased was working at the time of his death was carrying both meat and groceries.

The principal question involved was whether the deceased was employed in an extrahazardous business when he was killed. In considering the status of the deceased in view of the lease between his employer and the meat market operator (Jared), this court (three judges dissenting) said, at pp. 623-624:

"The lease in question contains a stipulation which, we think, brings the Benjamin Franklin Thrift Stores, Inc., within the purview of the act as an employer in an extrahazardous business. For it was stipulated that all deliveries of meat should be made by the lessor in its trucks. Jared paid the lessor thirty dollars a month for this service. So that, to the extent it was engaged in the business of delivering meat, the Benjamin Franklin Thrift Stores, Inc., was an employer in an extrahazardous business. And the deceased husband was, therefore, a part-time employee in an extrahazardous occupation. While engaged in the performance of such extrahazardous duties, he was a workman in contemplation of the act. *Denny v. Department of Labor & Industries,* 172 Wash. 631, 21 P. (2d) 275; *Morris v. Department of Labor & Industries,* 179 Wash. 423, 38 P. (2d) 395.

"In any event, an employee may, in contemplation of workmen's compensation acts, sustain the relationship of employee to two employers, a general employer who pays his wages and a special employer to whom he may be loaned and for whom he may be performing services. When such an employee is injured in the course of extrahazardous employment, he is a *workman* in contemplation of the workmen's compensation act, upon the theory that he is an employee of either one or both of the employers. . . ."

In the case before us respondent was not a loaned servant whose services involved work classified as extrahazardous. He was employed by an employer part of whose business was classified as extrahazardous and part of which was not. His duties as a salesman of granite on a commission basis clearly were not classified as extrahazardous. In this respect, his status was entirely different from that of the clerk in *Lunday* or the truck driver's helper in *Berry v. Department of Labor & Industries,* 11 Wn. (2d) 154, 118 P. (2d) 785, 140 A.L.R. 392 (1941), also cited by respondent.

We have set forth many times the four conditions that need be established for an employee to be entitled to benefits under the Industrial Insurance Act. They are: (1) the relationship of employer and employee must exist between the injured person and the employer; (2) the injured person must be in the course of his employment;

(3) the injured person must be in the actual performance of duties required by the contract of employment; (4) the work being done must be such as to require the payment of industrial insurance premiums. *Gordon v. Arden Farms Co.,* 53 Wn. (2d) 41, 44, 330 P. (2d) 561 (1958).

■ The fourth element has not been established in the present case. Respondent was not engaged in extrahazardous employment at the time of his injury; therefore, the employer would not be required to pay industrial insurance premiums for him. As previously shown, the result is unchanged by the fact that an employee for whom premiums are paid at times performs the same work that respondent was doing when he was injured.

Respondent was not engaged in extrahazardous employment at the time of his injury; therefore, the superior court erred in reversing the decision and order of the Board of Industrial Insurance Appeals entered April 9, 1962. The trial court's judgment of June 18, 1962, is reversed and the decision and order of the Board of Industrial Insurance Appeals is affirmed.

OTT, C. J., WEAVER, and HAMILTON, JJ., and MURRAY, J. Pro Tem., concur.