In the Matter of Injury to Jerome JOHNER, an employee of Coal-Onial Homes.

Jerome S. JOHNER, Employee of Coal-Onial Homes, Appellant (Employee-Claimant),

v.

WYOMING STATE TREASURER, ex rel. WORKER'S COMPENSATION DIVISION, Appellee.

No. 5592.

Supreme Court of Wyoming.

April 20, 1982.

Thomas M. Padget, Thomas, O'Neil & Padget, Gillette, for appellant.

Steven F. Freudenthal, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., Crim. Div., Allen C. Johnson, Sr. Asst. Atty. Gen., and Carl J. Hildebrand, Asst. Atty. Gen., for appellee.

Before ROSE, C. J., and RAPER, THOMAS, ROONEY and BROWN, JJ.

ROSE, Chief Justice.

This appeal involves a challenge by Jerome S. Johner to the district court's order cancelling his temporary total-disability benefits.[1] This order also required that an offset be made against the worker's permanent partial-disability award for certain temporary total-disability benefits which the court perceived to have been improperly received. Appellant petitioned the district court to reconsider the offset aspect of its decision, which petition was denied.

Our review of the worker's compensation statutes leads us to conclude that the district court acted without authority in allowing the State to recover the temporary total-disability payments.

We will reverse.

FACTS

The appellant, Jerome Johner, injured his back by falling off a ladder while in the course of his employment for Coal-Onial Homes on October 19, 1977. The worker

---

1. Appellant is not challenging the portion of the order of May 15, 1981 terminating his temporary total disability benefits but only that portion requiring him to repay the worker's compensation fund.

was awarded temporary total-disability benefits under § 27–12–402, W.S.1977.[2]

In July of 1978 a disc was removed from a portion of appellant's back and Mr. Johner continued to comply with the rules and regulations applicable to obtaining temporary disability benefits and his doctor continued to submit reports and bills to the court.

In April of 1981, the district court became concerned that for the three previous months doctors' reports had not been filed with respect to appellant's continuing temporary total-disability status. The district judge inquired of appellant's doctor, who, on May· 15, 1981, filed with the court a letter which said that since May of 1980 appellant's condition had not improved. The doctor further reported that, in his opinion, Mr. Johner's condition was stabilized and concluded that the worker had suffered a 20% total permanent partial disability to his body. Upon receipt of this letter, the district court entered the challenged order which declared that appellant, as of May 30, 1980, had ceased to be entitled to any temporary disability payments and that any overpayment would be offset against a future permanent partial-disability award.

## THE OFFSET WAS IMPROPER

In entering the challenged order, the district judge was purportedly acting pursuant to the authority contained in § 27–12–611, W.S.1977. That section of the Worker's Compensation law provides:

"(a) Each employee awarded compensation for temporary total disability shall submit himself for medical examination by a physician licensed to practice medicine in this state, upon request by his employer, at a place designated by the employer which is reasonably convenient for the employee. The employee may have a licensed physician present of his own selection. The purpose of the examination is to determine whether the employee has recovered so that his earning power at any gainful occupation for which he is reasonably suited by experience or training, is substantially restored.

"(b) *The results of the examination shall be reported by the employer and the physician to the clerk of the district court who made the award in the first instance, and the matter shall be disposed of as the judge deems proper. If the judge finds that the employee has recovered and has been restored to his earning ability, and that compensation should be discontinued, his decision and judgment shall be certified to the director and state auditor and state treasurer and shall be direction to those officers to discontinue compensation payments.*

"(c) If an employee refuses to submit to or obstructs the examination, his right to monthly payments shall be suspended until the examination has taken place. No compensation shall be paid during the period of refusal." (Emphasis added.)

2. § 27–12–402, W.S.1977 provides:

"(a) Temporary total disability means a compensable injury which temporarily incapacitates the employee from performing any work at any gainful occupation for which he is reasonably suited by experience or training for the time, but from which he may be able to resume work. In such cases the employee shall receive a monthly allowance or pro rata portion thereof, of two-thirds of his actual monthly rate of pay but not less than one hundred eighty-eight dollars ($188.00) per month nor more than the state's average monthly wage set annually by the state treasurer.

"(b) No temporary total disability payments shall be allowed for the first three (3) days of disability unless the incapacity extends beyond eight (8) days. As soon as the recovery is so complete that the earning power of the employee at a gainful occupation for which he is reasonably suited by experience or training, is substantially restored, the payment shall cease. If the employee dies before receiving all the temporary total disability that is due him or that has accrued to his benefit, the unpaid balance shall be paid to his dependents.

"(c) In determining the period of temporary total disability the day upon which the disability occurred shall be included unless the employee received full payment of wages for the day. No temporary total disability benefits are payable to state employees during a period in which they receive a salary while on sick leave."

■ As emphasized above, the important portion for purposes of this appeal is subsection (b) which permits the district judge to terminate or continue an employee's temporary benefits upon examination of the physician's reports. The appellant does not challenge the authority of the district court to terminate his temporary payments, but argues that the judge is without authority to order recoupment of alleged overpayment. The State, on the other hand, argues that we should construe § 27–12–611 as permitting, by implication and as a matter of policy, district judges to order repayment in these circumstances. Since § 27–12–611 is silent upon the issue of recoupment, we will agree with the appellant.

■ As a general rule of construction we have said that the Worker's Compensation law is to be liberally and reasonably construed so that the industry and not the worker will bear the burden of injuries suffered. *Mor, Inc. v. Haverlock*, Wyo., 566 P.2d 219 (1977); *Pease v. Pacific Power & Light Co.*, Wyo., 453 P.2d 887 (1969); *Wright v. Wyoming State Training School*, 71 Wyo. 173, 255 P.2d 211 (1953). We have also recognized that worker's compensation is a statutory responsibility and any change or addition to the law is a function of the legislature and not the courts. *In re Sikora*, 57 Wyo. 57, 112 P.2d 557 (1941). Finally, as a matter of general statutory construction, the rule is that, in construing a legislative enactment, we are bound by the language found within its four corners and we are not at liberty to insert language, words or provisions that do not there appear. *Matter of Adoption of Voss*, Wyo., 550 P.2d 481 (1976); *Lo Sasso v. Braun*, Wyo., 386 P.2d 630 (1963). We cannot usurp the power of the legislative branch in deciding what should have been said. *Barber v. State Highway Commission*, 80 Wyo. 340, 342 P.2d 723 (1959).

With these propositions in mind, it is for us to decide whether or not § 27–12–611 conferred upon the district judge the authority to order recoupment of the temporary disability benefits which the court decided the appellant had received but to which he was not entitled.

This question is new for this court but it has been thoroughly discussed in other jurisdictions. In *Tompkins v. George Rinner Construction Co.*, 196 Kan. 244, 409 P.2d 1001 (1966), it was held that even though the employer subsequently won a challenge to an award for compensation, no recoupment or recovery of the benefits paid to the employee during the pendency of the appeal could be ordered since the legislature had not included a provision therefor. The premise for the court's decision rested in the proposition that the workmen's compensation laws were exclusive and provided the only procedures for obtaining and enforcing an award. 409 P.2d at 1003. Similarly, in *State v. Olson*, 172 Wash. 424, 20 P.2d 850 (1933), the court held that an absence of a statutory provision precluded the recoupment of funds paid to an employee because of a mistake of fact as to the nature and extent of injuries. See also: *Deal v. Dept. of Labor & Industries*, 78 Wash.2d 537, 477 P.2d 175 (1970). It was held in *American Mutual Insurance Companies v. Murray*, Me., 420 A.2d 251 (1980) that the absence of a statutory provision for recovery of overpayments precluded the courts from applying common-law notions of restitution since the worker's compensation statutes provided the exclusive remedy. The court explained the reasons for its holding as follows:

"Whether, when the worker has lost on appeal, the beneficent purposes of our workers' compensation law would be frustrated by a rule requiring repayment of benefits paid pursuant to the mandate of 39 M.R.S.A. § 104–A is a question to be addressed by the legislature. To attempt to resolve this question by engrafting upon the statutory scheme judicially created doctrines of restitution would involve us in the establishment of broad social policy in a field of law created by the legislature in response to legislative dissatisfaction with judicial solutions to the problems of compensation for workers injured in industrial accidents. We are not asked to construe the Workers'

Compensation Act; rather, we are asked to establish policy in this uniquely statutory field when the legislature has deliberately elected to remain silent. In the absence of an express legislative command or a clear indication of legislative intention, we leave the parties where the legislature left them." 420 A.2d at 252. For similar holdings see: *Stewart v. Saginaw Osteopathic Hospital*, 100 Mich.App. 502, 298 N.W.2d 911, 914 (1980); *Williams v. State Accident Insurance Fund*, 31 Or.App. 1301, 572 P.2d 658 (1977). Even where the legislature has provided for the recovery of benefits paid to an unentitled worker, a court has held that such recoupment can only occur where the original award was granted under jurisdictionally defective procedures, rather than due to a mere mistake of fact. *Mitchell v. State Workmen's Compensation Commissioner*, W.Va.App., 256 S.E.2d 1 (1979); *Hagy v. State Workmen's Compensation Commissioner*, W.Va. App., 255 S.E.2d 906 (1979). The courts generally feel that allowing recoupment of benefits previously paid and utilized by the worker with a good-faith claim would defeat the general purpose of worker's compensation statutes which are designed and meant to assist and protect the injured employee through the recovery process.

With these authorities in mind, we are led to the conclusion that the failure of the legislature to include within § 27–12–611, any provision establishing the right of the State to recover benefits paid to an employee which are later determined to have inured to him or her erroneously, precludes the action taken by the district court in this case. Nowhere in § 27–12–402 is it suggested that such authority exists and we must therefore conclude that the legislature, in granting the authority to the district courts to terminate temporary disability benefits, did not intend that any such order could have a retroactive effect. We cannot read into § 27–12–611 such a power, and if we have misconstrued the intent of the legislature it is a matter for that body to resolve. We hold that the district judge acted in excess of his authority in ordering the offset of the alleged overpayments made to appellant, and that all the court was entitled to order was the termination of appellant's temporary disability benefits as of the date such order was entered, which date is May 15, 1981.

Given this conclusion, it is unnecessary for us to consider the appellant's challenge to the constitutionality of § 27–12–611.

We therefore reverse that portion of the district court's order which authorizes the State to set off the temporary disability benefits received by appellant between May 30, 1980 and May 15, 1981 against any future permanent partial disability award.