403 P.2d 178 (1965)
In the Matter of the Workmen's Compensation Claim of Glenda Vere GIMLIN, Widow of Daniel Gilbert Gimlin, Deceased, filed under the Wyoming Workmen's Compensation Law.
WYOMING STATE TREASURER, Appellant (Defendant below),
v.
Glenda Vere GIMLIN, Widow of Daniel Gilbert Gimlin, Deceased, on behalf of herself and minor children of Daniel Gilbert Gimlin, Deceased, Appellee (Plaintiff-Claimant below).
No. 3417
Supreme Court of Wyoming.
June 22, 1965.
*179 John F. Raper, Atty. Gen., Thomas A. Burley, Sp. Asst. Atty. Gen., Cheyenne, for appellant.
Daniel P. Svilar, of Boyer & Svilar, Lander, for appellee.
Before PARKER, C.J., and HARNSBERGER, GRAY and McINTYRE, JJ.
Mr. Justice GRAY delivered the opinion of the court.
Daniel Gilbert Gimlin, deceased, an employee of Wyoming Air Service, a corporation, was killed while piloting an airplane in the business of his employer. His widow, Glenda Vere Gimlin, on behalf of herself and their minor children, filed claims for death benefits under provisions of the Workmen's Compensation Law of Wyoming, Tit. 27, Ch. 4, W.S. 1957, Tit. 27, Ch. 4, W.S. 1963 Cum.Supp., and Chs. 17, 18, and 193, S.L. of Wyoming, 1965. The employer did not resist the claims, but the State Treasurer as trustee of the Workmen's Compensation Fund resisted the claims on the ground that at the time of the accident which resulted in the fatal injuries to decedent, the decedent was not engaged in an extra-hazardous occupation within the coverage of the law. In disposing of the claims, the trial court determined, among other things, that the decedent at the time of his death was within the coverage afforded by the Workmen's Compensation Law and awarded the benefits to claimants. The State Treasurer has appealed from such orders, and the sole question presented is whether or not the trial court erred in reaching the foregoing conclusion as a matter of law.
The material facts are uncomplicated and largely free from dispute. From a stipulation of the parties and from evidence adduced at the hearing it is disclosed that the business of the employer, Wyoming Air Service, was carried on at the municipal airport in Riverton, Wyoming, and as its name indicates its business was devoted to the rendering of services in connection with the operation of airplanes. Its activities consisted of maintaining, repairing, and servicing aircraft. It was also the owner of airplanes which were used to furnish air-taxi and air-charter trips. Its facilities and equipment were also used for the purpose of conducting a flight-instruction school. The State Treasurer concedes that at least the portion of the employer's business devoted to the maintenance, repair, and servicing of airplanes was within the classification of an extra-hazardous occupation as defined in §§ 27-49(I) (a) and 27-49(I) (b), W.S. 1957.
The decedent was employed by the Wyoming Air Service in the fall of 1963, and in general his duties were to gas and service planes of commercial airlines, which was usually done from about 8:30 a.m. to 9:30 a.m.; on occasion to pilot his employer's planes in rendering air services; to work in the repair shop as an apprentice mechanic; to perform janitor and watchman work around the hangars; and as a pilot with an instructor's rating to instruct in the ground school. Approximately sixty percent of decedent's time was spent on the ground and the remaining forty percent was devoted to flying.
In the stipulation of the parties it is recited that during the month of December *180 1963 the employer entered into an oral agreement with the Fremont County Predatory Animal Board by terms of which the employer agreed to provide an airplane, a pilot, and a person to act as a gunner to hunt coyotes in Fremont County, Wyoming. The employer was to be compensated at the rate of $14 per hour of flying time devoted to such occupation. The record further discloses that the arrangements made between the employer and the said board were under the supervision of the United States Department of the Interior Fish and Wildlife Service and such Service had on at least two occasions approved payment by the Fremont County Board to the employer for performance rendered under the agreement. There was also testimony describing in some detail the nature of the operation. The plane would be flown at an elevation of approximately 300 feet. The gunner carried a twelve-gauge shotgun and used shells furnished by the board. When a coyote was observed from the air the pilot would descend to an elevation of approximately fifty feet over the coyote and the gunner would then make the kill.
On the morning of February 26, 1964, the decedent was instructed by his employer to pilot the plane that was to be used for the day's hunt. During the flight, for reasons undetermined, the plane crashed and the decedent and the gunner riding with him were both killed.
It was also stipulated that at the time of the accident the decedent was reported on the employer's payroll report to the Workmen's Compensation Department "on the basis of performance as an employee * * in capacities other than an airplane pilot."
In support of his claim that the death loss here was not covered under the law, the State Treasurer argues that even though the decedent was within a covered occupation while performing his work on the ground (with the exception of instructing) he was not engaged in a covered occupation while piloting a plane for the reason that such an occupation was not specifically enumerated by the provisions of Ch. 25, § 1, S.L. of Wyoming, 1963 (§ 27-56, W.S. 1963 Cum.Supp.), as an extra-hazardous occupation. That is the only point argued in the brief. Concededly the argument presents an interesting question. However, because this case can be determined on other grounds, we deem it unnecessary to decide that point. Our reason for so stating is that, in the first instance, we agree with the contention of counsel for the claimants that the awards of the trial court must be upheld because of the provisions of the statute relating to "county trappers," which we shall later discuss; secondly, recalling that disposition of matters of this kind are largely dependent upon the facts and circumstances of each case, Pope v. Safeway Stores, Inc., 54 Wyo. 266, 91 P.2d 58, 65, we point out that subsequent to the accident here the legislature has further amended § 27-56 and has now declared that "aircraft" pilots, employed under circumstances such as we have here, are engaged in an extra-hazardous occupation. Ch. 18, S.L. of Wyoming, 1965. Without expressing any view as to what effect, if any, such amendment might have on a decision based on the theory advanced by the State Treasurer, it is perfectly obvious that the legislature has resolved the matter for the future. Thus, whatever conclusions we might now reach with respect to the matter before us would be of little aid or benefit to the State Treasurer, to the employer, to the workman, or to the bench and bar of this state. A similar case is not apt to come before the courts.
Turning then to the question of whether or not decedent was engaged in the covered occupation of a county trapper at the time of his death, we would first remind of the basic approach consistently followed by this court since the inception of the Workmen's Compensation Law in the year 1915. Provisions of the law are to be "liberally construed so that where reasonably possible the industry and not the individual workman should, to a large extent, bear the burdens of accidents suffered within it." In re Sikora, 57 Wyo. 57, 112 P.2d *181 557, 563. See also Pope v. Safeway Stores, Inc., supra, 91 P.2d at 60, and In re Jensen, 63 Wyo. 88, 178 P.2d 897, 907.
The principal provision with which we are here concerned is presently contained in Ch. 17, § 1, S.L. of Wyoming, 1965, which provides in part:
"The extra-hazardous occupations to which this act is also applicable are as follows: * * * county trappers under the supervision of the United States fish and wildlife service, when paid out of funds of the predatory animal board of the individual counties, * * *."
The evidence is uncontroverted that the Fremont County Predatory Animal Board is an agency of the county.
Unfortunately the legislature did not undertake to define the term "county trappers," but notwithstanding it seems clear that the term was not used in the limited sense that a workman was covered only when using traps and trapping devices for the purpose of capture. It will be noted from the language immediately following the statutory term that reference is made to supervision of the United States Fish and Wildlife Service and to the Predatory Animal Board of a county. An inquiry into the authority of said board is helpful in determining the intent of the legislature.
Under the provisions of § 11-103, W.S. 1957, the board is authorized to "exercise general supervision over the eradication and extermination of such predatory animals as are in the habit of preying upon and destroying livestock, pigs, poultry and other domestic animals, including wild game, and by such local representation and authority to devise and put in operation methods as will best secure and obtain the object of eradicating such predatory animals." Section 11-104, W.S. 1957, provides:
"The respective boards are empowered to enter into cooperative agreements with the United States fish and wildlife service, * * * for the purpose of eradicating predatory animals that prey upon domestic livestock, poultry and wild game."
From the foregoing we think the conclusion inescapable that the term "county trapper" when liberally and reasonably construed in the setting within which it was used would embrace the hunting of coyotes by the use of facilities such as an airplane and a shotgun. Fox Park Timber Co. v. Baker, 53 Wyo. 467, 84 P.2d 736, 743, 120 A.L.R. 1020.
It is then a short step to reach the conclusion that the trial court was warranted, in the first instance, in holding that the employer in carrying out its agreement with the board was engaged in an activity classified by the legislature as an extra-hazardous occupation. The fact, if it be a fact, that the employer carried on the operation of its planes as a separate segment of its business would not be controlling. Pope v. Safeway Stores, Inc., supra, 91 P.2d at 66. It is further well settled that an employer's business may be covered as to some phases by workmen's compensation, and not covered as to other phases. Maley v. Martin, 111 Colo. 545, 144 P.2d 558, 560; Reed v. Russell, 67 Idaho 84, 172 P.2d 853, 854; Mid-Continent Petroleum Corporation v. Harris, Okl., 289 P.2d 147, 148-149.
Also, the fact that the hunting was being done by the employer under an agreement with the board, rather than the board performing the work by its own employees, would not of itself relieve the employer from responsibility. We find no language in § 27-57(A) that compels that construction. The Workmen's Compensation Law, Ch. 198, § 6, S.L. of Wyoming, 1959 (§ 27-60, W.S. 1963 Cum.Supp.), contemplates that on occasion a county will engage in "extra-hazardous work in which workmen are employed for wages" and that such work may be done under an agreement with a contractor. The provision goes to some length to make certain that workmen engaged in such work are brought under the coverage of the law by the employer. The fact that *182 the employer was engaged in an extra-hazardous occupation in performing its agreement had a definite bearing upon the status of the decedent at the time of the fatal accident.
As we held in Ideal Bakery v. Schryver, 43 Wyo. 108, 299 P. 284, 290, and in the Sikora case, 112 P.2d at 562, where the employment is extra-hazardous the question of whether or not injuries are compensable does not rest alone on those injuries directly caused by the risk or hazard specifically enumerated by the legislature. If the injury results from performance of the duties of employment it is compensable, even though the particular duty may have been incidental but called for by the employment. We think that is the controlling principle here. The record shows that on the day of the accident the employer assigned to decedent and to the gunner the duty of working in the extra-hazardous business of the employer, i.e., the hunting of coyotes. An airplane was to be utilized in the work. It is clear that while the workmen occupied the plane in such employment they were "at work in places where their employer's business requires their presence and subjects them to extra-hazardous duties incident to the business." Section 27-49 (III) (a), W.S. 1957. Under the principle above mentioned, the mere fact that decedent undertook to pilot the plane would not exclude coverage under the law. The piloting of the plane was simply an incident of, and directly connected with, the extra-hazardous business of his employer. It is that fact which distinguishes this case from Leslie v. City of Casper, 42 Wyo. 44, 288 P. 15, upon which the State Treasurer relies. For a case illustrative of the point see Ft. Smith Aircraft Co. v. State Industrial Commission, 151 Okl. 67, 1 P.2d 682.
Neither does the fact that the employer reported decedent as employed in some other capacity and contributed to the compensation fund on that basis prevent the awards if the dependent family "is legally entitled thereto." Pope v. Safeway Stores, Inc., supra, 91 P.2d at 60.
In view of the foregoing we cannot hold that the trial court erred in making the awards to the claimants, and the same are accordingly affirmed.
Affirmed.