**ROCKY MOUNTAIN TANK & STEEL CO.,**
Appellant (Employer below),

v.

**Mrs. Jack RAGER, Daughter of Carter A.**
Ross, Deceased Employee, Appellee
(Claimant below).

No. 3569.

Supreme Court of Wyoming.

Feb. 14, 1967.

William T. Schwartz, D. Thomas Kidd, Casper, for appellant.

James E. Sinon, Casper, for appellee.

Before PARKER, C. J., and HARNS-BERGER, GRAY, and McINTYRE, JJ.

Mr. Justice PARKER delivered the opinion of the court.

Mrs. Jack Rager, daughter of Carter A. Ross, deceased, filed a claim for award under the Workmen's Compensation Law, alleging that Ross's death occurred while he was engaged in his duties in extra-hazardous employment for Rocky Mountain Tank & Steel Co., which circumstance was denied by the employer. On the hearing, the court held for the claimant, ordering an award of $13,000 for the deceased's widow. In the resulting appeal, the sole issue is whether the employee came to his death under circumstances which make the Workmen's Compensation Law applicable.

In the main, the facts are not in dispute. The appellant owned property near Casper on which was situated a large building (100′ by 650′), in a portion of which was conducted its steel fabrication business, the remainder being rented as warehouse space. Also located on the premises were some rental business properties and three houses, which were used as residences. Appellant indicates that the entire area was fenced. The houses were rented, sometimes to employees and sometimes to other persons. The ones occupied by decedent and another employee had extensions of the company's telephone. Decedent was hired by appellant about a month before his death as a janitor and night watchman. His work commenced about 4:30 p. m., after the day's steel fabricating business was finished. He cleaned the offices, made certain that all lights and stove fires were out, and saw that the front gate was closed. For his services he received $100 per month, payable $15 per week in cash, and $40 by way of monthly rental of one of the company residences, which he and his wife occupied as a family home. There was some conflict of testimony as to his duties as watchman, but persons acquainted with the decedent's activities said that he made the rounds during the evening, checking the property at eight or nine o'clock at night or thereafter, sometimes as late as midnight, and the man who replaced him indicated that *his* duties continued until the next morning.

During the week before Ross's death, he removed the stove from the house where he lived and replaced it with another belonging to his son-in-law. When the coroner, in answer to a call from a highway patrol officer, arrived at the Ross home on the morning of December 14, the television set was on and the deceased was sitting on a couch, fully dressed, a holstered pistol on his waist. The coroner established the time of death as late evening, December 13 (the last time anyone had spoken to the deceased had been between 9 and 9:30 p. m., December 13), and the cause as carbon monoxide poisoning; the vent stack (flue), supposed to carry the fumes from the stove to the outside air, was plugged.

Appellant charges that the trial court erred in finding that the decedent came to his death in the course of his employment, insisting that claimant did not sustain the burden of proof since there was no evidence (a) that the portion of employer's business for which the decedent was employed at the time of the accident was within the enumerated extra-hazardous occupations recited in the relevant statute or that decedent was engaged in an enumerated extra-hazardous occupation; and (b) that the injuries sustained by decedent were incurred as a result of his employment and while at work.

■■ Addressing ourselves to the first point raised by appellant, specifically, "That portion of the employer's business for which the decedent was employed at the time of the accident was not an enumerated extra-hazardous occupation under the Workmen's Compensation Act and at the time of the accident which resulted in the fatal injuries to decedent, the decedent was not engaged in an enumerated extra-hazardous occupation within the coverage of the law," we find that the criticism divides itself into two concepts, each of which requires a separate discussion. Counsel say initially that the employer's business was not within § 27–56, W.S. 1957 (1965 Cumulative Supp.), which

includes in the list of extra-hazardous occupations "factories" and "warehousing and transfer." We are unable to agree with this assertion. Appellant's position is that the accident by which the fatal injury occurred happened in the late evening when the steel fabricating business was closed down, and that even if it is admitted that the employee was a watchman in addition to being a janitor the only business which was being conducted by the employer during the hours that the employee worked was that of renting space to third parties, which was not an extra-hazardous business. As is pointed out, this court has approved the well-settled rule that an employer's business may be covered as to some phases by workmen's compensation and not as to others. In re Gimlin's Claim, Wyo., 403 P.2d 178, 181. Leslie v. City of Casper, 42 Wyo. 44, 288 P. 15, is cited as a case directly in point. Even were we to agree with appellant that its "warehousing" activities were not covered by the Workmen's Compensation Law, we fail to see that Ross's duties required him to have contact only with that phase of his employer's operations. The fact that the steel fabricating business, conceded by appellant to be a factory, was not in operation during his hours of employment did not, during those hours, change the nature of the employer's business, which was by statute, and was here conceded to be extra-hazardous. We think there was sufficient evidence upon which to base a finding that the employee's duties required him to be near or have contact with the extra-hazardous phases of his employer's business. Accordingly, we must hold this portion of appellant's contention untenable.

Passing to the second aspect, we note the assertion that neither the occupation of janitor nor watchman is included in the governing statute and that under the rule, expressio unius est exclusio alterius, the legislature, by enumerating what employment is considered as extra-hazardous, has excluded all other forms of employment from that classification. We consider such a rigid interpretation of the word "occupa-

tion" unwarranted. We alluded to this problem in Ideal Bakery v. Schryver, 43 Wyo. 108, 299 P. 284, 290:

"It is further urged * * * that * * the injury was not one within the purview of the Workmen's Compensation Law, and that only injuries sustained through the use of power machinery are compensable under the law as applied to bakeries. With this contention, also, we are unable to agree.

* * * * * *

"It will be observed that the Legislature did not say that compensable injuries sustained in extrahazardous employment were only those which were caused by one of the risks which induced the Legislature to include those engaged in such employment as within the operation of the act. We are not disposed to limit the language of the statute by reading into it provisions which are not there. The law certainly includes injuries suffered through the performance of all duties of the employment, whether main or incidental thereto but called for by it. * * *"

As to the second charge of error, appellant argues that "The injuries sustained by the decedent were not incurred as a result of his employment and while at work in or about the premises occupied, used or controlled by the employer nor while at work in places where his employer's business required his presence and subjected him to extra-hazardous duties incident to the business." This criticism brings to attention an aspect of the Workmen's Compensation Law which is perplexing, both in the literal application and in the necessary ad hoc determination called for by a trial court in contested cases. The Wyoming law provides, § 27-49 [III.] (a), W.S.1957:

"The words 'injuries sustained in extra-hazardous employment' shall include death resulting from injury, and injuries to employees, as a result of their employment and while at work in or about the premises occupied, used or controlled by the employer, and injuries occurring elsewhere while at work in places where their

employer's business requires their presence and subjects them to extra-hazardous duties * * *."

Appellant emphasizes that the injury here in issue did not occur while the deceased was at work on or about the employer's premises. From the nature of the evidence in this case, the contention is not and could not be that the deceased at the time he was overcome and asphyxiated was doing any physical thing required of him by his employer, unless it was merely being on hand and available to continue with his assignments at a later time in order that he accomplish the purposes of his employment. However, there was testimony in the record from which the court was entitled to believe that the deceased was employed in appellant's factory as a janitor and night watchman with duties of cleaning offices, closing doors, putting out fires, and locking gates; that he occupied a residence on the premises as a part of his compensation and at the mutual convenience of employer and employee; that when the factory was closed he answered the phone in his residence and thereafter called the manager or other proper person; that part of his obligation was to see that all of the doors were locked and to watch the property, making rounds to check it during the night.

██ As we indicated earlier, the question of responsibility under the Workmen's Compensation Law for injury during times of rest and the like is one which is indeed difficult and cannot be categorically resolved; but in general it is said that acts necessary to the life, comfort, or convenience of an employee while at work are incidental to the service, and an injury occurring while in the performance of such acts may be compensable. Of course, this principle can be applied only restrictively and in the light of facts and circumstances arising in any given instance. In the case here before us, we cannot say that there was insubstantial evidence to support the holding of the court as to the deceased's having been at work in or about the premises occupied and controlled by the employer

at the time that he incurred injuries which led to his death. In so saying, we are well aware of the contrary inferences which might have been drawn from the same testimony adduced before the trial court. Nevertheless, since there was substantial evidence upon which the trial court could base its determination, its order is affirmed.

Affirmed.