**William LERCH, Appellant (Plaintiff),**

v.

**STATE of Wyoming ex rel. WYOMING WORKER'S COMPENSATION DIVISION, Appellee (Defendant).**

No. 85–209.

Supreme Court of Wyoming.

Feb. 19, 1986.

Robert W. Horn, Jackson, for appellant.

A.G. McClintock, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., John W. Renneisen, Sr. Asst. Atty. Gen. and Terry J. Harris, Asst. Atty. Gen., Cheyenne, for appellee.

Before THOMAS, C.J., and BROWN, CARDINE, URBIGKIT and MACY, JJ.

URBIGKIT, Justice.

The district court denied a claim for worker's compensation benefits to a ski area employee who sustained a work-related injury, by holding that employment on the ski race crew was not extrahazardous as defined by § 27–12–106(a)(lv), W.S.1977 (1983 Replacement). We disagree.

The parties jointly presented one question to the district court:

"Where an employee's duties require skiing to provide a public service but do not include guiding clients for compensation is such employee a covered employee within the meaning of § 27–12–196, W.S. 1977 [sic] [§ 27–12–106(a)(lv), W.S. 1977]."

The appellant, by brief, also raised an equal-protection issue in the district court, and submits that issue again on appeal.

William Lerch was employed by the Jackson Hole Ski Corporation as a crew member of the recreational race department. That department sets race courses and su-

pervises races for NASTAR,[1] Bartender's League, Super NASTAR, and the daily Marlboro Ski Challenge. Specifically, crew members organize slalom poles, set race courses, tie flags, transport batteries to the race course, set up timing equipment, establish communications between the start and finish lines, set up warning signs and safety fences, and operate the timing equipment.

On December 12, 1984, while skiing down to the Marlboro Ski Challenge race course, Lerch hit a rock which caused him to collide with a tree and resulted in treatment at St. John's Hospital in Jackson for a broken femur. Lerch was temporarily totally disabled and filed a claim for worker's compensation benefits and the extensive medical bills incurred. The Worker's Compensation Division, but not the employer, objected to payment of his claim after initial approval and payment of the first bills, on the ground that his occupation was not extrahazardous by statutory definition. Lerch requested a hearing before the district court, wherein the parties stipulated that the injury was suffered within the scope of his duties, in the regular course of employment, and not due to culpable negligence. After hearing, the court denied the worker's compensation claim in finding that the worker failed to prove that his occupational responsibility came within the statutory definition.[2]

The statute which we are asked to interpret in this appeal provides:

"The extrahazardous occupations and employees to which this act * * * applies are:

* * * * * *

"(lv) Recreational guides employed and actively engaged in service to clients for compensation and involved in hazardous outdoor guiding and public service activities including skiing, mountain climbing, river floating, hunting, fishing, backcountry trips and horseback riding." Section 27–12–106(a), W.S.1977.

The paragraph is now interpreted in this court in the first instance.[3]

Recreational guides were added to the list of extrahazardous occupations during the 1983 general session of the legislature.

1. We are told that NASTAR stands for National Association of Amateur Skiers.

2. Claim payment objection came only from the state Worker's Compensation Division, and the employer noted approval for each item claimed. Inquiry was made in oral argument before this court whether payments for the insurance premium had been made by the employer to the Worker's Compensation Division in behalf of the specific injured worker. Neither counsel was able to answer. The employer's report of injury, signed and filed by the employer, provided on the front "If the Employer disputes the Worker's Claim he must set forth in detail on the back of this report his reasons therefor." No objection was taken on the reverse of the form.

Furthermore, in large legend and capital letters on the reverse the following was included:
"NOTICE
"DO NOT FILE THIS INJURY REPORT WITH WYOMING WORKER'S COMPENSATION DEPT. OR CLERK OF DISTRICT COURT UNLESS THE INJURED WORKER IS REPORTED ON YOUR WYOMING PAYROLL REPORTS AND YOU ARE PAYING PREMIUM FOR THIS WORKER TO WYOMING. FILE ONLY WITH WYOMING DEPT. OF LABOR AND STATISTICS."

The space below for disputing the worker's claim was blank.

In the face of the uniform approval of payment by employer, initial payment and approval from the fund and the form submitted, it would be reasonable to determine that premium payments were made by the employer and accepted by the department, and that an estoppel argument could be afforded. Neither the fact nor the argument was presented to the trial court or briefed here, and consequently will not be an issue for decision by this court. Although some medical bills and compensation were paid by the department, the present unpaid medical bills include a hospital bill of over $6,000.

It is apparent that something less than a fully developed record was presented by either counsel for district court resolution.

3. We are aware that a joint legislative committee is again considering the Wyoming Worker's Compensation Act. The confusion, complexity and inequalities in rational result as afforded by § 27–12–106(a), would be fruitful matter for analysis so that this court does not have to consider a due-process or equal-protection argument in some later challenge. Any number of invidious comparisons are possible, as related to the hazardous nature of compared job responsibilities.

Senator John Turner (Sublette-Teton Counties), whose constituents include the claimant and the employer in this case, proposed the language in question in identical terminology as a committee-of-the-whole amendment to a Senate File which passed the Senate but died in the House Labor, Health and Social Services Committee. Digest of Senate Journal of the 47th State Legislature, General Session, 1983, SF No. 0071, p. 92. Senator Turner later that session located a House Bill regarding worker's compensation benefits, and piggybacked the language under consideration onto the House Bill. It passed the Senate, and the House of Representatives concurred with the Senate amendment. Digest of House Journal of the 47th State Legislature of Wyoming, General Session, 1983, HB No. 0178, pp. 163, 165. The composite bill became Ch. 106 § 1, S.L. of Wyoming 1983.

We interpret the statute in question ever mindful of this court's

"* * * policy of liberally construing statutes relating to worker's compensation in light of their beneficent purpose." *Conn v. Ed Wederski Construction Company,* Wyo., 668 P.2d 649, 652 (1983).

There are four categories of ski-slope employees at Jackson Hole Ski Corporation which potentially may fall within the definition of extrahazardous in § 27–12–106(a)(lv). Each employee of the ski instruction, ski guide, ski patrol, and recreational race departments must ski in order to serve the clientele of Jackson Hole Ski Corporation.[4]

Our inquiry is directed in this case to the race crew members as one of the four slope job categories. An insufficient record is available to tell how the other categories are treated by the Division.[5] See *Rocky Mountain Tank and Steel Co. v. Rager,* Wyo., 423 P.2d 645 (1967); *In re Gimlin,* Wyo., 403 P.2d 178 (1965).

The apparent objection by the Division to the present payment for the injury to this employee addresses three criteria for inclusion in the definition of extrahazardous under the particular statutory section, which include: (1) employment as a recreational guide; (2) service for clients; and (3) involved in outdoor guiding. The State then contends that Lerch did not comply in required responsibility.

The cases cited which involved compensable injuries and scope of work are not necessarily relevant to the issue here of covered employment. See *Matter of Van Matre,* Wyo., 657 P.2d 815 (1983); *Mor, Inc. v. Haverlock,* Wyo., 566 P.2d 219 (1977).

A major mistake can be made in not recognizing the proper scope of the third criteria, which is,

"* * * involved in hazardous outdoor guiding *and public service activities* including skiing, mountain climbing, river floating, hunting, fishing, backcountry trips and horseback riding." (Emphasis added.)

In a realistic effort to apply the section to the activities of the Jackson Hole Ski Corporation, it would appear that the question is whether Lerch (1) qualified as a recreational guide; (2) provided a service to clients for compensation and not as a vol-

---

4. Included at the ski facility as covered by definition would be janitors and groundskeepers, paragraph (xxxvi); laundry workers, paragraph (xxvi); kitchen employees and waiters, paragraph (xxvii); delivery and motor vehicle operators, paragraphs (xix) and (xviii), and possibly the ticket-takers and helpers employed at the tram and chairlift arrival and departure areas; bartenders, paragraph (liv); building maintenance, paragraph (xli); any medical staff, paragraph (xxxviii). It is plausible to contend that the racing personnel would come within the criteria of either paragraph (xliii), telephone, telegraph, electric light, power plants or lines,

or paragraph (xxxi), engineering works. The activity is also not that far removed from dude ranching in a generic evaluation.

5. A premium payment status letter of the Division dated June 11, 1982, addressed to the employer, was offered as an original exhibit in the Supreme Court. Division objection was made. The information had not been provided to the trial court and consequently cannot be considered in this court, and admission was rejected by this court.

unteer; and (3) was involved in outdoor guiding and public service activities.

■ This employee was not a ski guide under the differentiated job descriptions of the Jackson Hole Ski Corporation. Titles, however, are not determinative. The question is job responsibilities and occupational hazard, as far as coverage under worker's compensation laws is concerned. In re Gimlin, supra; 81 Am.Jur.2d Workmen's Compensation § 100, pp. 99–100: "The question is to be determined, however, independently of the contractual or colloquial designation of the duties or position of the employee."

We hold that ski-racing personnel, under the job descriptions afforded by the record, qualify as recreational guides by nature of the work and kind of responsibility which exists and service afforded. See *Rocky Mountain Tank and Steel Co. v. Rager,* supra.

■ The second question is qualification as "employed and actively engaged in service to clients for compensation." We do not find the terminology to relate exclusively to individual fee relationships. The terminology, with reason, excludes nonpaid volunteers or guests who are not "hiring" services. A restricted definition for coverage of only the guide who gets the commission-type compensation is not justified under the broad scope of the law required. *Conn v. Ed Wederski Construction Company,* supra; *Wyoming State Treasurer ex rel. Workmen's Compensation Department v. Boston,* Wyo., 445 P.2d 548 (1968). See *Nimmo v. State,* Wyo., 603 P.2d 386 (1979). See also *Basin Electric Power Cooperative v. State Board of Control,* Wyo., 578 P.2d 557 (1978).

Practical analysis supports this conclusion. At the Jackson Hole Ski Corporation, ski instructors were on a fee basis 9:00 to 10:00 a.m., and 12:00 noon to 2:00 p.m., and hourly wages 10:00 a.m. to 12:00 noon and 2:00 to 4:00 p.m. Surely this system could not determine coverage at separate times during the day. Ski guides were solely commissioned, and undoubtedly the most dangerous and important group, the ski patrol, with safety responsibilities, were never paid commissions. Reason requires that compensation of the employee and not individually paid commissions is the determinative factor for this criteria.

Consider the effect of the rule of *Rocky Mountain Tank and Steel Co. v. Rager,* supra, or a differentiated-day schedule. See rules for statutory interpretation in *State Board of Equalization v. Cheyenne Newspapers, Inc.,* Wyo., 611 P.2d 805 (1980); and *School Districts Nos. 2, 3, 6, 9 and 10, in Campbell County v. Cook,* Wyo., 424 P.2d 751 (1967).

Since the Jackson Hole Ski Corporation receives fees for racing activities, we hold that the personnel responsible therefor as salaried employees fall within the statutory criteria as a member of the racing crew. Consequently, the second criteria is satisfied.

Compliance with the third criteria is determinable by its complete statement:

"* * * involved in hazardous outdoor guiding and public service activities * *."

Clearly, William Lerch was involved in a hazardous, outdoor guiding and public-service activity involving, in this case, skiing, as compared with the other possible activities as separately enumerated in the statute.

We conclude that the race-crew member's responsibility for setting up race courses, warning signs, and safety fences reasonably brings him within the auspices of the statute.

We cannot find a proper difference among the four categories of ski-slope employees so that whatever group or groups may be covered by injury compensation eligibility as differentiated from premium collection by the Division can be distinguished so that William Lerch, in his job responsibility, was not also covered.

As noted, the Jackson Hole Ski Corporation has four categories of employees who ski on a daily basis in performance of their duties. Only one category is labeled "ski

guides." This category may be covered by worker's compensation. Two other categories, ski instructor and ski patrol, may or may not be covered by worker's compensation, and are not labeled as guides. One of the enumerated duties of the ski patrol is to give assistance or guidance to skiers who are confused or in trouble; thus the ski patrol can and should logically be included in the statutory definition of hazardous outdoor guide with little difficulty. Any distinction within the categories is particularly inapposite in light of this court's policy to deliberately construe worker's compensation provisions so that

" '[w]here reasonably possible the industry and not the individual workman should, to a large extent, bear the burdens of accidents suffered within it.' *In re Sikora*, 57 Wyo. 57, 112 P.2d 557, 563." *In re Gimlin*, supra, 403 P.2d at 180.

■ Since the facts come to the trial court by a stipulated statement, an analysis of those facts is equally available to this court to determine whether a covered occupation existed. *Wendling v. Cundall*, Wyo., 568 P.2d 888 (1977).

The status of employment did not raise a factual question, since the duties and responsibilities of the employee were submitted to the court by stipulation. Consequently, only a question of law remained for application of the facts to the principles of law involved. *Wendling v. Cundall*, supra. See also *Murphy v. Petrolane-Wyoming Gas Service*, Wyo., 468 P.2d 969 (1970); *Wyoming Farm Bureau Mutual Ins. Co. v. May*, Wyo., 434 P.2d 507 (1967); 5 Am.Jur.2d Appeal and Error § 845, p. 288.

The district court stated that the legislature did not consider whether skiing is extrahazardous activity, and that the statute does not cover skiing in and of itself. We agree that a ski-related injury alone is not enough to bring that injury within the purview of the statute. Compensable service

and hazardous guiding and public service activities are required. We hold that Lerch was required to perform duties which bring him within the § 27–12–106(a)(lv) definition of extrahazardous employment.[6]

The judgment denying worker's compensation coverage for the accident to William Lerch is reversed, and the case is remanded for entry of an order in conformity herewith.

BROWN, J., dissenting.

The majority holds that appellant is entitled to worker's compensation benefits under § 27–12–106(a)(lv), W.S.1977, (June 1983 Replacement) which provides in part:

"(a) The extrahazardous occupations and employees to which this act * * * applies are:

" * * *

"(lv) *Recreational guides* employed and actively engaged in *service to clients* for compensation and involved hazardous outdoor guiding and public service activities including skiing * * *." (Emphasis added.)

Appellant admits that he is not a recreational guide nor does he engage in a service to clients, but rather he serves only his employer, the Jackson Hole Ski Corporation. In my view, appellant's job description does not come within the ambit of § 27–12–106(a)(lv). In order to bring appellant within the statute it must be expanded and stretched. We have said numerous times that we will not do this. *Weyerhaeuser Company v. Walters*, Wyo., 707 P.2d 733 (1985); *Matter of Estate of Reed*, Wyo., 672 P.2d 829, 42 A.L.R.4th 167 (1983); *Saffels v. Bennett*, Wyo., 630 P.2d 505 (1981).

The majority observes in footnote 2 that " * * * it would be reasonable to determine that premium payments were made by the employer * * *." This is speculation, and there is nothing in the record in support of

---

**6.** Our interpretation of the statute dispenses with any need to address the equal-protection issue raised by the claimant. *Reno Livestock*

*Corp. v. Sun Oil Co. (Delaware)*, Wyo., 638 P.2d 147 (1981).

this observation. The majority also notes that the employer approved appellant's claim. I attach no significance to this. It is not surprising that the employer did not object in that payment of the claim would have negligible, if any, financial impact to the employer.

The majority opinion is a well-reasoned logical argument that appellant should be covered by the Worker's Compensation Act. I do not disagree that appellant should be covered; however, the legislature should correct the deficiency in the law rather than this court.

I would affirm the district court.