770 P.2d 1104 (1989)
STATE of Wyoming ex rel., WYOMING WORKERS' COMPENSATION DIVISION, Petitioner (Objector-Defendant),
v.
Shirley B. MEDINA, Respondent (Employee-Claimant).
No. 88-308.
Supreme Court of Wyoming.
March 23, 1989.
*1105 Joseph B. Meyer, Atty. Gen., Josephine T. Porter, Senior Asst. Atty. Gen., for petitioner.
George Santini of Graves, Santini & Villemez, P.C., Cheyenne, for respondent.
Before THOMAS, URBIGKIT, MACY and GOLDEN, JJ., and BROWN, J., Retired.
URBIGKIT, Justice.
Wyoming Workers' Compensation coverage for a motel maid who injured her back in moving a false headboard bed for the daily clean-up and linen change is addressed by this appeal.
Shirley Medina (Medina) was employed by Motel 6 where she sustained lower back injuries as described in her testimony:
Q. How big were the beds that you had to move?
A. Uh, the beds were double wide; they  they're double beds is what they are.
Q. Could you describe to me physically what was required to move those beds.
A. Okay. Uh, the beds are against the wall. They have * * * headboards that are attached to the wall to make them look like if the bed has a headboard with the bed together. Okay. What, uh, I have to do is I have to pull the bed away from the wall to get the linen off and to put clean linen and make the bed and push the bed back where it belongs.
Q. Physically, how far would you have to move that?
A. Um, geez, I'd say a couple of feet.
Q. Do you have any idea how much it would weigh?
A. No, I  it's more than, well, like the day that it happened  I'm not used to having heavy things being, you know, pulling heavy things and, uh, it's a lot more heavier than I can, I can safely (inaudible). I, uh, I'd say about 50 pounds to me because they don't have any rollers on the legs. The, uh,  all it is is it's flat on the, on the carpet.
Q. Do you move both the mattress and the box spring at the same time then?
A. Yes.
Q. You can't tell us how much it weighed but you can tell us it was hard to move.
A. Yes. Because there's no rollers on the, on the legs.
Q. Let's talk about that morning of May 4th. How were you hurt?
A. Well, I, uh, had gotten my things that I usually do for, with the start of the day: my cart, my bags and everything. To start with my first rental and, uh, I pulled the first bed out and nothing happened.
Q. It's not going to pull.
A. The second one, right the minute I pulled it, I had a big back pain  it's a  in my leg, the whole leg gave out and the back also. Uh, I had a heck of a time trying to, uh, proceed working. I told my supervisor and, uh, she told me that, uh, I had to stay and work for the rest of the day.
Following institution of a claim for work related injuries by Medina, objection was taken by the Wyoming Workers' Compensation Division (Workers' Compensation), contending that her occupation was not *1106 enumerated extrahazardous and the employer had not elected coverage under a voluntary coverage opportunity. An administrative hearing was held by a hearing officer of the Office of Independent Hearing Officers as a contest between Workers' Compensation and Medina. Coverage was found and the claim approved as a decision from which this appeal is pursued by Workers' Compensation. The administrative decision was first appealed to the district court by a petition for review by Workers' Compensation and certified to this court without district court decision by W.R.A.P. 12.09 pursuant to the request of Medina.
The single issue presented is whether the work activities performed by Medina come within the coverage provisions of Wyoming statutes and constitutional provisions.[1]
Following hearing, the hearing officer concluded:
3. One of the statutorily enumerated extrahazardous occupations at the time of the injury to the Employee/Claimant was "building service." § 27-14-103(a)(xxxvi) W.S. 1977 (1987 cum.supp.). As defined by statute, "building service" includes "janitors, elevator operators, and maintenance workers employed in and about... . motels." § 27-14-103(f)(i), W.S. 1977 (1987 cum. supp.).
4. The terms "janitor" and "maintenance worker" are not specifically defined by statute. Reference to standard reference texts including the American Heritage Dictionary, 2nd College Edition, and Webster's 3rd New International Dictionary define the term "janitor" as "one who tends to the maintenance or cleaning of a building" and "one that keeps the premises of an apartment, office building, or other building clean or free of refuse, tends to the heating system and makes minor repairs."
5. "Maids" are not statutorily defined and reference to standard reference texts indicate that such term is commonly defined as a "virgin", a "lady-in-waiting", or a "female servant". The common definitions do not accurately reflect Employee/Claimant's actual work.
6. The Wyoming Worker's Compensation Act is to be liberally construed in light of it's beneficent purpose. Although this rule of liberal construction does not allow the extending of benefits to injuries which do not reasonably fall within the language employed by the legislature, a reasonable construction of the term "building service" and it's statutory definition leads to the conclusion that Employee/Claimant's duties fairly fall within this statutorily enumerated extrahazardous occupation of "building service."
Workers' Compensation now attacks this legal conclusion. A strict construction of *1107 the enumerated categories is requested. The appeal presents no issue of services performed, doubt of job requirements or denial of work-related injury. A decision is consequently presented for statutory interpretation as a matter of law.[2] The Wyoming statutory job title differentiation system provides problems in increasing complexity of application. A motel maid is neither stated to be included nor excluded. The hearing officer found coverage from moving beds to janitorial responsibilities. To analyze further, it would appear that identical services performed at a dude ranch would be covered, since dude ranching is included without exception. Maid services are likewise included for hospital personnel by the lack of any exclusion. Laundry workers doing apparently similar tasks would also be covered. Female bartenders who wash glasses and mix drinks are covered, as are kitchen employees and waiters. State institution employees who would perform similar or identical services to those of Medina would also be covered. These employees including "matrons" who provide daily cleaning services in state office buildings, with worker's compensation protection with any on the job injury, appear in job responsibility and activity to be identical to the maids providing clean-up services in motels, except that moving and making beds is not required for the state employee.
Wyoming has a long history of statutory construction to benefit the worker and favor coverage. Lerch v. State ex rel. Wyoming Worker's Compensation Div., 714 P.2d 754 (Wyo. 1986); Conn v. Ed Wederski Const. Co., 668 P.2d 649 (Wyo. 1983); In re Gimlin, 403 P.2d 178 (Wyo. 1965); In re Sikora, 57 Wyo. 57, 112 P.2d 557, 563 (1941). This case is confined to the facts presented where an injury was sustained in moving a bed to perform job responsibilities. We observe that moving that bed is as hazardous for a motel maid as it would be for a janitor, a moving company employee or a hospital attendant. Lacking inclusion or exclusion by named category which would define legislative intent to the contrary, we affirm the decision of the hearing officer in finding coverage and granting benefits within his stated basis for decision.
Affirmed.
THOMAS, J., filed a concurring opinion.
GOLDEN, J., filed a dissenting opinion, with whom BROWN, J., Retired, joined.
BROWN, J., Retired, filed a dissenting opinion, with whom GOLDEN, J., joined.
THOMAS, Justice, concurring.
I agree with the result reached by the majority opinion in its interpretation of the statutory provisions in this case. I do not, however, see any need to invoke the Constitution of the State of Wyoming. Our usual rule is that the court will not consider constitutional questions if the controversy can be resolved on any other basis. E.g., K N Energy, Inc. v. City of Casper, 755 P.2d 207 (Wyo. 1988); Nehring v. Russell, 582 P.2d 67 (Wyo. 1978); Schoeller v. Board of County Commissioners, 568 P.2d 869 (Wyo. 1977); Stambaugh v. State, 566 P.2d 993 (Wyo. 1977); Bowers v. Getter Trucking Company, 514 P.2d 837 (Wyo. 1973). It is obvious that this case can be *1108 resolved on the basis of interpretation of the statute, because this court did so. Consequently, the invocation and the suggested application of Wyo. Const. art. 10, § 4 by the court on its own motion is not appropriate. Neither the hearing examiner nor either of the parties perceived any necessity for invoking or applying the constitution to this case.
GOLDEN, Justice, dissenting, with whom BROWN, Justice, Retired, joins.
"`If there is no meaning in it,' said Alice's King, `that saves a world of trouble, you know, as we needn't try to find any.'" Frankfurter, Some Reflections on the Reading of Statutes, 47 Columbia L.Rev. 527, 533-34 (1947).
I think the majority opinion is wrong for several reasons. First, it affirms the hearing officer's wrong decision. Second, the majority opinion is neither based upon nor true to this court's time-honored principles of disciplined appellate review. And, third, the majority opinion impermissibly trespasses into the legislative domain. What is remarkable is that the majority has managed to do all of this in such a simple, straightforward case. Before explaining my reasons for disagreeing with the majority, I will put the procedure and the facts of this case in proper perspective.
The Wyoming Worker's Compensation Division is the agency statutorily charged with administering the worker's compensation law. W.S. XX-XX-XXX through -203, -506, -508, -801 through -804 (June 1987 Repl.);[1]Randell v. Wyoming State Treasurer, ex rel. Wyoming Worker's Compensation Division, 671 P.2d 303, 308 (Wyo. 1983). Under that law the Wyoming legislature recently created the office of independent hearing officers. W.S. XX-XX-XXX(a). When an injured employee, such as Mrs. Medina, files an application for an award because of injuries suffered during her employment and her employer or the division objects, an independent hearing officer conducts a contested case hearing. Id. That hearing officer has exclusive jurisdiction to make the final administrative determination of the validity and amount of compensation payable under the compensation law. W.S. XX-XX-XXX(c). By following the contested case procedures of the Wyoming Administrative Procedure Act (WAPA), the hearing officer determines the contested case. W.S. XX-XX-XXX(b). The hearing officer's decision, including the award, is an administrative determination of the employer's rights, the employee's rights, and the disposition of money within the worker's compensation account as to all matters involved. W.S. XX-XX-XXX. The director of the Worker's Compensation Division may appear, as she did here, before the hearing officer and defend against the employee's claim, having the same rights of defense as the employer. W.S. XX-XX-XXX. The director may appeal from the hearing officers' decision. W.S. XX-XX-XXX. That appeal is as provided by WAPA. W.S. XX-XX-XXX(b); and W.R.A.P. 12.01 through 12.12.
Under WAPA, a party appealing from a final administrative determination in a contested case, like Mrs. Medina's, may do so on the following terms:
[T]he reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record * * *. The reviewing court shall:
(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:
(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;
* * * * * *
(C) In excess of statutory jurisdiction authority or limitations or lacking statutory right;
* * * * * *

*1109 (E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.
W.S. 16-3-114(c) (Oct. 1982 Repl.).
Mrs. Medina's claim for an award has been litigated under these statutory and administrative procedures. We are at the stage where this court is reviewing the division director's appeal from the hearing officer's decision which awarded Mrs. Medina compensation benefits for a back injury she suffered when, as a maid employed by Motel 6, she pulled a bed away from the wall in order change the bed linen. We are informed that only Mrs. Medina, the maid, testified at the hearing. Based upon her testimony and his statutory interpretation of W.S. XX-XX-XXX(a)(xxxvi), and W.S. XX-XX-XXX(f)(i) (Cum.Supp. 1987), the hearing officer decided that the maid was engaged in an extrahazardous occupation and employment when she hurt her back. Specifically, he determined she was engaged in the extrahazardous occupation and employment of "building service" as designated by W.S. XX-XX-XXX(a)(xxxvi), and which is statutorily defined as "janitors, elevator operators and maintenance workers employed in and about office buildings, hotels, motels, apartment houses, school houses, courthouses and public buildings, excluding employees of the United States." W.S. XX-XX-XXX(f)(i).
Hastily and perfunctorily deciding the division director's appeal from the hearing officer's decision, the majority abandons all semblance of disciplined appellate review. We see neither structure nor methodology nor analysis in its decision-making process.
In this appeal, the division's director asserts the hearing officer's decision is arbitrary, capricious, an abuse of discretion, and not in accordance with the law. I agree, and I would also find that decision to be lacking statutory right and unsupported by substantial evidence. W.S. 16-3-114(c)(ii)(C) and (E). In reviewing this appeal I have followed this court's long-established precepts in worker's compensation cases. "The burden of proof by a preponderance of the evidence in worker's compensation cases is assigned to the claimant. Matter of Van Matre, [657 P.2d 815 (Wyo. 1983)]; Alco of Wyoming v. Baker, [651 P.2d 266 (Wyo. 1982)]; and Black Watch Farms v. Baldwin, [474 P.2d 297 (Wyo. 1970)]." Randell, 671 P.2d at 307. In reviewing the division director's appeal, I "will not invade the province of the factfinder and reach a different factual conclusion * * * if there is substantial evidence to support the findings made below." Id. at 307-08. I am not bound, however, by the hearing officer's answers to questions of law or interpretations of statutory provisions. W.S. 16-3-114(c). My review has been guided by the rule "that if the employer does not engage in extrahazardous activities, then whether the individual employee's activities are hazardous in nature is not material to [the determination whether the employee was involved in an extrahazardous occupation]." Baskin v. State of Wyoming, ex rel. Worker's Compensation Division, 722 P.2d 151, 154 (Wyo. 1986). In other words, our decision whether the occupation in question is within the extrahazardous classification turns on the employer's activities, not that of the individual employee. Cf. Randell, 671 P.2d at 308, where this court based its analysis on the employer's statutory functions, not the individual employee's own perception as having been involved in an extrahazardous occupation.
Mindful of these rules which I must faithfully apply, I read Mrs. Medina's testimony before the hearing officer since that was the basis for the latter's findings of fact, conclusions of law, and final administrative decision. I find Mrs. Medina testified that her employer, Motel 6, was engaged in the business of operating "a motel for people who rent a room for the day or couple of days, whatever." With that piece of evidence in hand, I turn to the classifications of extrahazardous occupations which our legislators established and then published in W.S. XX-XX-XXX(a)(i)-(iv), (b)(i)-(xi), (c), (d)(i)-(v), and (e)(i)-(iv). I read the lengthy list of legislatively declared extrahazardous occupations. I do not see in that lengthy list the statutory function of a motel or hotel operator. I do *1110 see, however, the mention of "building service." W.S. XX-XX-XXX(a)(xxxvi). But, I quickly remember that Mrs. Medina's employer, Motel 6, is not engaged in the extrahazardous occupation of "building service." Her employer operates "a motel for people who rent a room for the day or a couple of days, whatever."
Having conducted my appellate review in this fashion, I am satisfied that the division's director is correct in her assertion that the hearing officer's decision is wrong. I, too, am satisfied that I am correct in thinking the hearing officer's decision is wrong. Considering the division director's position, and the results of my own analysis, I also find comfort in yet another of this court's basic precepts:
It has long been recognized in Wyoming that the construction placed upon a statute by those charged with its execution is entitled to some deference. Demos v. Board of County Commissioners of Natrona County, Wyo., 571 P.2d 980 (1977). This court, when construing a statute, is bound to consider the interpretation of a statute made by the agency administering it. Langdon v. Lutheran Brotherhood, Wyo., 625 P.2d 209 (1981).
Matter of Hasser, 647 P.2d 66, 69 (Wyo. 1982); accord Randell, 671 P.2d at 308.
As I ponder the results of my appellate labors, my thoughts light upon the strange statutory interpretation which the hearing officer and then the majority have given the statutory definition of "building service," stated in W.S. XX-XX-XXX(f)(i). The hearing officer and this court's majority found the word "maids" in that definition. In the course of my appellate review of this case, I have read that statutory definition many times. But each time I read it, the result is the same. I cannot find the word "maids" in the plain language of that statute. I see only these words, "janitors, elevator operators and maintenance workers employed in and about office buildings, hotels, motels, apartment houses, school houses, courthouses and public buildings, excluding employees of the United States." Each time I have read those words, I have kept in my mind yet another of this court's precepts: "In construing a statute, words must be given their plain and ordinary meaning. The result in this case becomes obvious when the plain words of the statute are applied to the facts of the case." Herring v. Welltech, Inc., 660 P.2d 361, 365 (Wyo. 1983) (citations omitted); accord, Baskin v. State of Wyoming, ex rel. Worker's Compensation Division, 722 P.2d 151, 154 (Wyo. 1986). Each time I give the unambiguous definitional words of "building service" their plain and ordinary meaning, as written by our plain and ordinary citizen legislators, I do not see the word "maids."
In common experience we have seen janitors, elevator operators and maintenance workers working in each one of these described buildings or structures. We have seen "maids" working only in hotels and motels, but not in the other described buildings or structures. This observation points out a meaningful distinction, one which reasonably explains why the legislature omitted the word "maids" from those persons in "building service" occupations. All members of this occupation have something in common; all members of this occupation are found working in all of these buildings. "Maids" are not members of this occupation because they do not work in all of these buildings; they only work in hotels and motels, not in office buildings, apartment houses, school houses, courthouses, and public buildings.
The majority does rely on one precept, which is that the compensation statute must be liberally construed to provide protection for the injured worker. I whole-heartedly agree with that principle. But, it has no application here. "[T]hat legal proposition * * * is tempered by a requirement that a construction not be afforded which results in an extension of the coverage to situations which are not reasonably within the language of the statute. Alco of Wyoming v. Baker [651 P.2d 266 (Wyo. 1982)]; In re Hardison, [429 P.2d 320 (Wyo. 1967)]." Randell, 671 P.2d at 309.
Is there significance in my not seeing the word "maids" in the statutory definition of "building service"? This court has given me reason to believe there is. In Matter of *1111 Adoption of Voss, 550 P.2d 481, 485 (Wyo. 1976), this court listed rules of construction which here, as they did there, force the court "into a corner from which we have little hope of escape." We said:
The omission of words from a statute must be considered intentional on the part of the legislature. Words may not be supplied in a statute where the statute is intelligible without the addition of the alleged omission. Words may not be inserted in a statutory provision under the guise of interpretation. The Supreme Court will not read into laws what is not there. This court will not supply omissions in a statute as redress is with the legislature. We are alerted by all this to the result that it is just as important to recognize what a statute does not say as it is to recognize what it does say.
Id. (citations omitted).
As the majority informs us in footnote 1 at page 1106 of the majority opinion, the Wyoming legislature over the course of "some forty-five or more separate sessions" has established in deliberate fashion seventy-five categories and eleven definitional provisions specifically listing extrahazardous occupations to which the beneficent coverage of the compensation scheme applies. Carefully reading this detailed and specific classification of extrahazardous occupations, which was carefully and deliberately built by our elected representatives and senators over such a long period of this state's history, I am satisfied that that distinguished deliberative body could have quite easily and most effortlessly, had it intended to do so, included the rather specific word "maids" along with the equally rather specific words "janitors," "elevator operators," and "maintenance workers" when it wrote the definition of "building service." My satisfaction derives not only from the plain and ordinary reading which I must give these statutory words written by the legislators, but also from a bit of plain and ordinary common sense. When I think about the innumerable days and nights over "some forty-five or more separate sessions" that our representatives and senators spent in Cheyenne hotels and motels and public buildings as they wracked their individual and collective brains to establish the classification of extrahazardous employments and occupations, my mind boggles. And after the boggling stops, my mind is suddenly invaded by that wee bit of common sense I was telling you about. I bet those senators and representatives could tell the difference between the "janitors, elevator operators, and maintenance workers," on the one hand, and the "maids" on the other hand, all of whom were working in and around those hotels and motels where the legislators stayed. And, so, I think the legislators did not write the word "maids" into that statutory definition. We all know the legislators' job is to write words in and keep words out. We also know that part of the judge's job is to try not to do the legislators' job.
In this regard I remember the wise words of Felix Frankfurter:
[The courts] are confined by the nature and scope of the judicial function in its particular exercise in the field of interpretation. They are under the constraints imposed by the judicial function in our democratic society. As a matter of verbal recognition certainly, no one will gainsay that the function in construing a statute is to ascertain the meaning of the words used by the legislature. To go beyond it is to usurp a power which our democracy has lodged in its elected legislature. The great judges have constantly admonished their brethren of the need for discipline in observing the limitations. A judge must not rewrite a statute, neither to enlarge it nor to contract it. Whatever temptations the statesmanship of policy-making might wisely suggest, construction must eschew interpolation and evisceration. He must not read in by way of creation. He must not read out except to avoid patent nonsense or internal contradiction.
Frankfurter, supra, at 533.
In Mrs. Medina's simple, straightforward case, the majority has, I fear, rewritten a statute to enlarge it. Having gone beyond the limitation, the majority has usurped a *1112 power which our democracy has lodged in its elected legislature.
I respectfully dissent.
BROWN, Justice, Retired, dissenting, with whom GOLDEN, J., joins.
I am in complete agreement with the scholarly dissent of Justice Golden and join in such dissent.
To some, the rule of law set out in the majority opinion may be obscure. For the benefit of the less sophisticated, I have distilled the holding to be:
If an employee sustains an injury, he or she is engaged in extrahazardous employment, otherwise he or she would not have sustained the injury.
It requires a flight of fancy to determine that a motel or hotel maid is engaged in extrahazardous employment, unless the term extrahazardous is given some aberrant meaning. The American Heritage Dictionary 465 (1969) defines extra as "something more than what is usual," and hazardous as "marked by danger; perilous." Id. at 605.
I suppose the several hundred maids in Wyoming never knew, until they read the majority opinion, that their work was perilous, marked by danger to a degree more than what is usual. Now that the majority has ruled that the work of a maid is extrahazardous, the wages of the several hundred motel and hotel maids in the state should immediately be tripled. This is only fair. If other employees engaged in extrahazardous jobs, such as underground miners, roustabouts, roughnecks and construction workers, get paid for highly dangerous work, so should hotel and motel maids. If a maid's job is extrahazardous, and it must be so because the majority said it was, then I cannot envision a safe job or even one that is merely hazardous.[1]
Although the Worker's Compensation Division appealed this case, it is probably a case they will love to lose. Now that maids are classified as being engaged in extrahazardous employment, their employers will be required to pay premiums on these employees into the worker's compensation fund. This will be a big bonanza to the fund. It likely will be another hundred years before another maid is injured. The large amount accumulated because of these premiums can help subsidize payments made to injured oil rig workers, construction workers and miners. The legislature could not find a way to make the worker's compensation scheme solvent, but the Supreme Court may have.[2]
NOTES
[1] Wyoming has an enumerated category hazardous occupation statute of seventy-five separate provisions and eleven definitional sections which add further enumeration complexity. One occupation that is clearly not designated by name is that of a private employment motel/hotel room maid. W.S. XX-XX-XXX.

As this court is called to analyze the diverse structure that has been built by some forty-five or more separate sessions of the Wyoming legislature, the observed difficulty is finding constitutionally appropriate differentiations between similar employment activities. Lerch v. State ex rel. Wyoming Worker's Compensation Div., 714 P.2d 754 (Wyo. 1986).
The present text of the constitutional section as last amended in 1986 and as originally adopted by vote of the people in 1913 provides:
No law shall be enacted limiting the amount of damages to be recovered for causing the injury or death of any person. Any contract or agreement with any employee waiving any right to recover damages for causing the death or injury of any employee shall be void. As to all extrahazardous employments the legislature shall provide by law for the accumulation and maintenance of a fund or funds out of which shall be paid compensation as may be fixed by law according to proper classifications to each person injured in such employment or to the dependent families of such as die as the result of such injuries, except in case of injuries due solely to the culpable negligence of the injured employee. Such fund or funds shall be accumulated, paid into the state treasury and maintained in such manner as may be provided by law. The right of each employee to compensation from such fund shall be in lieu of and shall take the place of any and all rights of action against any employer contributing as required by law to the fund in favor of any person or persons by reason of the injuries or death.
Wyo. Const. art. 10, § 4 (emphasis added).
[2] Neither party has briefed the constitutional issue of equal protection, due process, and special legislation that pervades the continued process of categorization by name, but not necessarily by function, within the Workers' Compensation statutory structure derived from the "proper classifications" requirement of Wyo. Const. art. 10, § 4. This court will continue to seek a constitutional construction in avoiding unjustified or unrealistic differentiations in interpretation as recognizing the province of the legislature to establish extrahazardous occupations when involving extrahazardous tasks. Lerch, n. 1, 714 P.2d 754; Rocky Mountain Tank & Steel Co. v. Rager, 423 P.2d 645 (Wyo. 1967); In re Gimlin, 403 P.2d 178 (Wyo. 1965).

This court, in recognition of legislative intent, has a singular responsibility to provide a statutory application which, if possible, will provide a constitutional validity to the legislative action. Hamilton v. Territory of Wyoming, 1 Wyo. 131 (1873); Schaefer v. Thomson, 240 F. Supp. 247 (D.Wyo. 1964); Sturges v. Crowninshield, 17 U.S. (4 Wheaton) 122, 4 L.Ed. 529 (1819); Prigg v. Com. of Pennsylvania, 41 U.S. (16 Pet.) 539, 611, 10 L.Ed. 1060 (1842).
[1] All references to Title 27, Chapter 14, are taken from the June 1987 Replacement, unless indicated otherwise.
[1] A truly extrahazardous place and circumstance is at the front door of a public building at quitting time.
[2] In its enthusiasm to spend money from the Worker's Compensation Fund, the majority may want to include those who suffer ear strain from talking on the telephone. Another group might include those who suffer from chronic hypochondria, hysterical conversion or Munchausen's syndrome, also known as Baron Von Munchausen's disease.